JOHN K. BRODERICK, EXECUTOR OF THE ESTATE OF EMILIE C. BRODERICK, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89759. Promulgated December 23, 1938.

*G. A. Stamm, Esq.*, and *Phil Morelock, Esq.*, for the petitioner.
*Ralph F. Staubly, Esq.*, for the respondent.

**OPINION.**

BLACK: The parties are in accord as to the principal facts, but disagree as to the legal implications arising from them. The law presumes, however, that the respondent correctly construed the facts in the first instance when he determined the deficiency and the burden is upon the petitioner to overcome that presumption.

The petitioner contends that the facts established in the record negative "contemplation of death" as an impelling motive in causing the decedent to transfer her property to the trustee under the indentures dated July 19, 1919, and October 21, 1930. We think petitioner has met his burden of proof in that respect.

At the outset of this opinion we take note of the situation in the affairs of the Broderick family with respect to its interests in the Broderick & Bascom Rope Co. in June 1919, following the death of

John J. Broderick, and the economic necessity which compelled action to protect them. The family stock in that corporation, through John J. Broderick's will, had already been transferred to a trustee to hold in trust until 10 years after death of the mother (decedent herein). The parties have stipulated that since June 7, 1919, and prior thereto the members of the Broderick family have had in mind holding together intact their said stock in order to assure to them official positions with and equal voice in the management of the corporation; also, that reasons for decedent's having transferred the disputed assets to the trustee of the existing trust were to (a) provide for a fund which might be used should that become necessary in protecting the interests of the Broderick family in the corporation, (b) to assure to the transferor, Emilie C. Broderick, the income from the trust corpus during the remainder of her life, and (c) to relieve herself from the care and worries of managing the properties transferred. The parties also agree that the transfer at issue was not prompted by any condition of body or mind of the decedent that would have led her to believe that death was imminent or near at hand or that her death was likely to occur within a reasonably distant future.

These concessions of fact on the part of respondent would seem to foreclose the issue against him unless a construction of the trust instruments and the circumstances under which they were executed would justify a conclusion that they were testamentary in character and used primarily to effect a distribution of decedent's property at or after her death. The respondent contends that the trust instruments call for such a construction. In his brief the respondent asks us to find, in addition to the proposals of fact made by the petitioner to which he "subscribes", that one of the motives for the transfers was to make provisions for disposition of the trust corpus to and among decedent's grandchildren to take effect in enjoyment after her death. He also asks us to find "that it never became necessary, during the decedent's lifetime to use any part of the trust corpus to protect the interests of the decedent's family" in the Broderick & Bascom Rope Co. The last request need not be considered. Obviously the finding asked for would be material to no issue here, inasmuch as the protection intended by the trust was not limited to decedent's lifetime; neither could the transferor's motive be affected by the happening or nonhappening of the contingency it was intended to protect against.

As to the respondent's contention that *one of the motives* for transfer in question was disposition of the trust corpus to and among decedent's grandchildren, effective at her death, we think such inference naturally follows from the trust instruments. Such finding,

however, does not dispose of the case in the Commissioner's favor, since as between that and the several other admitted motives we think the motive to dispose of the corpus of her property after death to her grandchildren was secondary to the other impelling motives. Cf. *Thomas C. Boswell et al., Executors,* 37 B. T. A. 970. Naturally, when one executes a trust instrument directing how the income shall be paid during his lifetime and what disposition shall be made of the corpus after his death, the latter provision contemplates his death at some future time. That is the very purpose of disposal of the remainder at or after death. But such a provision does not necessarily mean that the transfer is made "in contemplation of death" within the meaning of the applicable statute. It may do so sometimes, depending altogether on the facts and circumstances of the particular case. In the *Boswell* case, by the trust instrument decedent provided for distribution of the income from the trust property during his life and for its further disposition, as well as that of the corpus, after his death.

The Commissioner argued there, as he has argued here, that notwithstanding that the settlor of the trust was in excellent physical health when he executed the trust and had no expectation of death from any existing bodily infirmity, yet, because the trust instrument made disposition of the remainder interest after his death, it was executed "in contemplation of death" within the meaning of the applicable statute. We denied that contention and held that the transfer to the trust was not made in contemplation of death nor was it intended to take effect in possession or enjoyment at or after death. It must be admitted that respondent's contention in this respect finds some support in the decision of the Tenth Circuit in *Commissioner* v. *Colorado National Bank of Denver,* 95 Fed. (2d) 160. Respondent in his brief cites that case, among others, and urges it as authority to support his views. That case, however, was recently reversed by the Supreme Court of the United States, and the Board's finding that the transfers in question were not made in contemplation of death was upheld. See *Colorado National Bank of Denver* v. *Commissioner,* 305 U. S. 23. The Supreme Court in that case pointed out that the learned Circuit Court in reversing the Board had erroneously interpreted the meaning of the term: "In contemplation of death." On this point, the Supreme Court said:

The Court's opinion seems to rest upon an erroneous interpretation of the term "in contemplation of death." The meaning of this was much discussed in *United States* v. *Wells,* supra. We adhere to what was there said. The mere purpose to make provision for children after a donor's death is not enough conclusively to establish that action to that end was "in contemplation of death." Broadly speaking, thoughtful men habitually act with regard to

ultimate death but something more than this is required in order to show that a conveyance comes within the ambit of the statute.

With the aid of the facts before us, we think it clear that the "particular concern" which dominated the mind of the decedent on July 19, 1919, and October 21, 1930, when the transfers herein were executed, was decedent's solicitude for and desire to protect her family's interests in the Broderick & Bascom Rope Co. Important also was decedent's desire to assure to herself her life income from her private estate through placing its management in the hands of the trustee and relieve herself of business responsibilities to which she was unaccustomed. These purposes as inducements for the transfer are conceded by the respondent and in the circumstances shown we find them to have been paramount to all others in decedent's mind and of her first and particular concern when she executed the transfers. In view of these findings, we hold that the petitioner has successfully sustained the burden put upon him of showing that the transfers in issue were not made in contemplation of death.

The respondent argues that the provision in the trust instrument giving decedent a life estate in the trust income and directing distribution of the corpus among her grandchildren after her death makes the trust corpus a part of the decedent's gross estate under section 302 (c) of the Revenue Act of 1926 as transferred interests "intended to take effect in possession or enjoyment at or after" death. On this claim as applied to the present transfer, we find that the authorities are against respondent's contentions. Here decedent reserved no power to revoke or change any of the provisions of the trust deeds, but conveyed title to and delivered possession of the assets to the trustee without condition. Her economic interests, therefore, in possession and enjoyment passed out of her hands and vested in the trustee when the trust was made. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *May* v. *Heiner*, 281 U. S. 238; *H. Seldon Taylor, Jr., et al., Executors*, 27 B. T. A. 220; *Thomas C. Boswell et al., Executors*, *supra*.

If the transfers in question had been executed after the effective date of the joint resolution of March 3, 1931, or of section 803 of the Revenue Act of 1932, amending section 302 (c) of the Revenue Act of 1926, admittedly the value of the property in question would be included as a part of decedent's gross estate for estate tax purposes because decedent reserved to herself for life the income from the property, but both trust indentures were executed prior to the effective dates of such provisions of the law, and under the recent decisions of the Supreme Court of the United States in *Hassett* v. *Welch*, *supra*, and *Helvering* v. *Marshall*, *supra*, these provisions have no retroactive effect.

For reasons above stated, we hold that the respondent erred in including the trust assets valued at $274,139.93 in the decedent's estate.

The parties having stipulated that the value of the estate disposed of by decedent under her last will and testament and concededly includable in decedent's gross estate amounted to $62,320.84, the estate tax herein will be recomputed upon that value.

*Decision will be entered under Rule 50.*