Estate of Anna D. Childs, Deceased, James H. Childs, Harvey Childs, III, Blair Childs and the Union Trust Company of Pittsburgh, Executors, v. Commissioner.
Estate of Childs v. Commissioner
Docket No. 111548.
United States Tax Court
1943 Tax Ct. Memo LEXIS 218; 2 T.C.M. (CCH) 388; T.C.M. (RIA) 45094; June 30, 1943
*218 1. Held, that under the provisions of her husband's will decedent acquired a life interest and not a fee in his residuary estate, and hence the value of the residuary property is not includable in her estate. 2. At the time of decedent's death 400 shares of H. Childs & Co., Inc. stock were held by her subject to an option at $10.00 per share. The fair market value of the stock at her death was $100 per share. Held, the proper value of such stock for Federal estate tax purposes is $10.00 per share. Hill Burgwin, Esq., 1515 Park Bldg., Pittsburgh, Pa., and J. Garfield Houston, Esq., for the petitioner. T. Harrison Miller, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $58,600.32 in the estate tax of the estate of Anna D. Childs, deceased. The issues are: 1. Whether the decedent held in fee or as a life tenant certain assets devised to her under the will of her husband Harvey Childs, Jr. 2. Whether 400 shares of stock of H. Childs & Co., Inc. are includable in the decedent's gross estate at their fair market value of $100 per share at the time of her death or at the option price of $10.00 per share, *219 as provided in the option agreement dated May 31, 1935. Findings of Fact The facts were stipulated and as so stipulated are adopted as findings of fact. The portions thereof pertinent to the issues are substantially as follows: The petitioners are the executors under the last will and testament of Anna D. Childs, deceased. The estate tax return for the estate of Anna D. Childs, deceased, was filed with the collector of internal revenue for the 23rd district of Pennsylvania. Harvey Childs, Jr., the husband of Anna D. Childs, died November 7, 1917, a resident of the City of Pittsburgh, Allegheny County, Pennsylvania, leaving a last will and testament which was duly probated before the Register of Wills of Allegheny County, Pennsylvania, and was recorded in the office of the Register in Will Book Volume 146, page 344. Letters testamentary were granted to Anna D. Childs and James H. Childs, the executors named therein. Paragraph V of that will is as follows: V. All the rest and residue of my Estate, of every sort, manner and description whatsoever, and wheresoever found, I give and bequeath to my beloved wife, ANNA D. CHILDS, for her own, without any reservation of any sort, to use *220 the income and such of the principal as may be necessary for her own maintainance and the comfortable maintainance of all my children unmarried and residing at home, with the wish that she look upon this bequest as a sacred trust, to be used as above indicated, and at her death to divide same equally among my children or their direct heirs, making such division, per stirpes. Harvey Childs, Jr. left five children. Three of them were children of a former marriage and two were also the children of the decedent, Anna D. Childs. He also had a stepchild who was the daughter of Anna D. Childs by a former marriage. The executors of the estate of Harvey Childs, Jr., deceased, filed a First and Final Account of their administration in the Orphans' Court of Allegheny County, Pennsylvania, at No. 229 November Term, 1918. The account was duly advertised and confirmed absolutely, and after audit thereof by the court a decree of distribution was entered awarding the residuary estate of the testator to Anna D. Childs under Paragraph V of his will. No exceptions to the decree were filed. With the decree of distribution the court filed an opinion (reported in 67 Pittsburgh Legal Journal 46). *221 Anna D. Childs died March 20, 1939. Her executors filed an account in the Orphans' Court of Allegheny County, Pennsylvania, at No. 3696 of 1939, entitled "Estate of Harvey Childs, Jr., Deceased. First and Final Account of Anna D. Childs (now Deceased) Life Tenant under the will of Harvey Childs, Jr., James H. Childs, Harvey Childs, III, Blair Childs and The Union Trust Company of Pittsburgh, Executors." After having been duly advertised, this account was confirmed absolutely, and, after audit by the court, a decree of distribution was entered awarding the balance for distribution shown on such account to the five children of Harvey Childs, Jr. No exceptions to the decree were filed. The decree became final October 23, 1939. Certain assets in the possession of Anna D. Childs at the time of her death, valued by the Commissioner at $297,221.33, are neither the same assets which she acquired in kind under Paragraph V of the will of Harvey Childs, Jr., or are assets purchased with the proceeds from the sale or redemption of assets which had been so acquired. Anna D. Childs segregated on her books the accounts relating to such assets. These assets do not include any assets purchased with *222 life insurance proceeds. At the time of his death Harvey Childs, Jr. was the sole propriety of the business of H. Childs and Company. A 4/5 interest in this business was a part of his residuary estate bequeathed under Paragraph V of his will. Shortly after his death the business was incorporated under the name of "H. Childs & Co., Inc.", and on January 12, 1918, 1752 shares of the capital stock were issued to Anna D. Childs for the aforesaid 4/5 interest. On January 16, 1918 Anna D. Childs purchased an additional 600 shares of the stock with part of the insurance proceeds. At the time of her death Anna D. Childs held one certificate for 1752 shares and another certificate for 600 shares of such stock, both registered in her name. The entire 2352 shares were distributed equally to the five children of Harvey Childs, Jr. On May 31, 1935 Anna D. Childs granted to her stepson, James H. Childs, an option for ten years from date to purchase 400 shares of the capital stock of H. Childs & Co., Inc., for $10.00 per share. The option recited that James H. Childs had managed and operated the company since 1917, had rendered exceptional service through the depression and that Mrs. Childs desired *223 to give him the opportunity of increasing his stockholdings. The other four children requested Mrs. Childs to give the option. The option gave James H. Childs the sole and exclusive right to purchase such shares and was binding on the decedent's estate. James H. Childs has not yet elected to exercise this option. The fair market value of the capital stock of H. Childs & Co., Inc., at the date of death of Anna D. Childs was $100 per share. Opinion VAN FOSSAN, Judge: The question involved in the first issue can be simply stated: Under Paragraph V of her husband's will did Anna D. Childs acquire a life estate or the fee in his residuary estate? By coincidence counsel for both the petitioner and the respondent have traveled the same path of reasoning but arrive at diametrically opposite conclusions. Each assumes that the decisions of the courts of Pennsylvania govern the construction of the will (see Blair v. Commissioner, 300 U.S. 5; Freuler v. Helvering, 291 U.S. 35, and each cites numerous Pennsylvania decisions to support his view. The petitioner argues that under a proper interpretation of the language of Paragraph *224 V of the will of Harvey Childs, Jr., and Anna D. Childs held the residuary estate as a life tenant, with limited power to consume the principal; that the Orphans' Court decided that she took a life estate; and that such decision is in accord with the law of Pennsylvania, as established by the Supreme Court of that State. The respondent's position is that the testator made to his wife an outright gift of the property and that the precatory words in Paragraph V following the words of absolute disposition do not serve to diminish the fee so created. Paragraph V of the will follows: V. All the rest and residue of my Estate, of every sort, manner and description whatsover, and wheresoever found, I give and bequeath to my beloved wife, ANNA D. CHILDS, for her own, without any reservation of any sort, to use the income and such of the principal as may be necessary for her own maintainance and the comfortable maintainance of all my children unmarried and residing at home, with the wish that she look upon this bequest as a sacred trust, to be used as above indicated, and at her death to divide same equally among my children or their direct heirs, making such division, per stirpes. *225 From careful study of this paragraph, we have come to the conclusion that it was the intent of the testator to bequeath to his wife the use of his residuary estate during her lifetime, with the privilege of invading the corpus if it should become necessary so to serve the purposes therein set forth, and to give to his five children or their issue the remainder of his estate unconsumed at the time of his wife's death. The words of that paragraph therefore spell out a life estate to the testator's wife, with the remainder to his children. The property was given by the testator to his wife "for her own, without any reservation of any sort" but with the purpose, definitely and conclusively expressed, "to use the income and such of the principal as may be necessary for her own maintenance and the comfortable maintenance of all my children unmarritd and residing at home." The respondent quotes the words "to my beloved wife, Anna D. Childs, for her own, without any reservation of any sort" to support his theory that the will gave her a fee, but he ignores the words immediately following. The entire paragraph must be considered as a whole in order to determine the true intent of the testator. *226 Inherent in the language ignored by the respondent is the dominant purpose of utilizing the income of the estate, in so far as it will go, in providing a comfortable living for the testator's wife and children at home; of invading the principal, if necessary, and at his wife's death of passing on the unused portion thereof to his children. The interpretation of wills varies with the language of each document. We find Pennsylvania cases tending to support the respondent's theory. See Kidd's Estate, 75 Pittsburgh 771; In re Robinson's Estate, 282 Pa. 581, and others. However, the decision of the Supreme Court of Pennsylvania which seems peculiarly applicable to the situation before us is found in Fassitt v. Seip, 240 Pa. 406. In that case the court held: In the will under consideration there is a devise over, and there are other provisions clearly indicating that the testator had in contemplation an "unexpended" balance of his estate at the death of his wife. He directed to whom this unexpended balance should go and how it should be enjoyed. He intended that his wife should have every use and enjoyment of his residuary *227 estate that he himself had while living. If necessary for her comfort and maintenance she could have consumed and expended all of it and for these purposes could have conveyed a fee simple title to a bona fide purchaser. But this she did not do. She died in possession of the properties and undertook to dispose of them by her will. We therefore agree with the conclusion reached by the learned court below that the properties in question are a part of the unexpended remainder of the estate of her husband and passed under his will to the devisees named therein. Following the views expressed in this decision, we have no doubt that the decedent obtained a life estate under her husband's will. The respondent argues further that the Orphans' Court did not decide the question whether the provisions of the will of Harvey Childs, Jr. gave to his wife the fee or a life estate in his residuary estate. We do not agree. Judge Miller of that court held: The foregoing devise is a clear gift to the wife of the residue of testator's estate, coupled with the wish that any portion of it remaining at her death shall be divided among his children or their heirs; the bequest with power of consumption *228 carried absolute title: Tyson's Estate, 191 Pa. 218. This does not mean, however, that the whole of the residue is hers to do with as she sees fit; it is limited to her own maintenance and that of his children, unmarried and residing at home; it cannot be diverted from these purposes. The extent of her consumption is within her control; her decision honestly reached in accordance with the purposes expressed by the testator, is not reviewable. * * * It does not follow that the remaindermen have no remedy. Only, however, when there is proof of a misuse of the estate contrary to the terms of the devise, and then the remedy is set forth in Watson's Estate, 241 Pa. 271. So long as she uses the property, income "and such of the principal as may be necessary," she has the unquestioned right to control the direction of it, and the court can only interfere when she attempts to divert the fund from the purposes for which it was bequeathed to her. He devises is to her "for her own"; while he says "without any reservation of any sort," he does limit the devise to her control of income and principal, if necessary, for the purposes *229 of maintenance. Whether the unconsumed residue is to be divided by her among his heirs or passes under this provision in the will, is a matter not before us now. It is sufficient to decide that the estate in her with a power of consumption, gives her absolute control and use, not only of income but of corpus when necessary, and until or unless misuse is shown, her judgment and discretion cannot be questioned. It is clear from this opinion that Anna D. Childs was limited in her use of the principal - a situation which would not have arisen if she had possessed the fee in the residuary property. Furthermore, in the decree entered in October, 1930, the court ordered that the funds in the estate of Harvey Childs, Jr., deceased, be distributed to the five "remaindermen," thus recognizing unquestionably the character of the estate acquired by his widow. That estate, as we have said, is a life interest in the residuary property, as provided in Paragraph V. The second issue presents the proper valuation of 400 shares of the stock of H. Childs & Co., Inc. at the time of the decedent's death. On May 31, 1935 the decedent gave her stepson an option to purchase 400 shares of the company's stock *230 at $10.00 per share. The option continued for ten years and was binding on the decedent's estate. The rights under the option were not exercised at the decedent's death. The option did not specify from what source the decedent should supply the 400 shares. Mrs. Childs had possession of 2,352 shares of the company's stock at the date of her death. Of these 1,752 were a part of the residuary estate of Harvey Childs, Jr., and the remaining 600 shares had been purchased by her from insurance proceeds. The Commissioner included in the decedent's estate the entire block of 2,252 shares. In so far as the 600 shares are concerned, the petitioners concede that all are properly includable in her estate, but assert that the value of the 400 shares under option should be reduced from the fair market value of $100 per share at the decedent's death to the amount of the option price of $10 per share. The respondent does not challenge the validity or enforceability of the option contract but contends that the fact that the option was not exercised at the time of the decedent's death compels us to disregard it. However, he overlooks the facts that the option bound the decedent's estate and that *231 the distribution to the five children of Harvey Childs, Jr. became effective on October 23, 1935, over seven months after her death. It might appear that the settlement of his stepmother's estate and the decree approving the equal distribution of the company's stock held by her would justify the assumption that James H. Childs was estopped from exercising the option, but it is unnecessary to carry the argument so far. The undisputed fact remains that, at the time of the decedent's death, 400 of her shares, asserted by the Commissioner to be her own property and so conceded by the petitioners, were burdened with the option. The principle is well established that the value of such stock is limited to the option price. Helvering v. Salvage, 297 U.S. 106; Commissioner v. Bensel, 100 Fed. (2d) 639, affirming 36 B.T.A. 246; Lomb v. Sugden, 82 Fed. (2d) 166; Wilson v. Bowers, 57 Fed. (2d) 682; Estate of John T. H. Mitchell, 37 B.T.A. 1. The value of the stock for purposes of Federal estate tax must be determined *232 as at the time of the stockholder's death. Lomb v. Sugden, supra. That value was $10 per share as to the 400 shares, and adjustments in the tax will be made accordingly. The parties have made various stipulations relating to credits and deductions. They will be given due consideration in the computation of the tax. Decision will be entered under Rule 50.