ESTATE OF JOHN T. H. MITCHELL, DECEASED, ANNA L. W. MITCHELL, ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74805. Promulgated January 4, 1938.

*E. L. Bono, Esq.*, and *Brice Clagett, Esq.*, for the petitioner.
*I. Graff, Esq.*, for the respondent.

### OPINION.

TYSON: The respondent has determined and asserted against the petitioner herein a Federal estate tax deficiency in the amount of $35,769.14, all of which is in controversy in this proceeding.

The petitioner assigns as errors in the respondent's determination (1) that 900 shares of capital stock of Lennen & Mitchell, Inc., owned by the decedent at date of his death, had a value of $313,771.93 on that date instead of $111,105.26 as reported on the return; (2) that the sum of $402,273.70, as the proceeds of certain insurance policies on the decedent's life, payable to decedent's business associate, is includable in the decedent's gross estate.

1

The petitioner, a resident of Greenwich, Connecticut, is the duly qualified and acting administratrix of the estate of John T. H. Mitchell, deceased, who died intestate on November 17, 1930, a resident of Greenwich, Connecticut.

In 1924 John T. H. Mitchell, now deceased, and Philip W. Lennen formed a corporation under the name of Lennen & Mitchell, Inc., for the purpose of engaging in the advertising business, with an office located in New York City. Each of those individuals acquired one-half or 900 shares of that corporation's capital stock and each continued to own such shares up to the time of the decedent's death. The advertising business conducted by Lennen & Mitchell, Inc., was of a highly personal service character and its success was dependent upon the efforts of those two individuals owning the stock. In the spring of 1928 Lennen and Mitchell entered into an oral agreement, which was thereafter reduced to writing and signed by the parties on April 30, 1929. The agreement recites, *inter alia*, that the parties thereto "deem it to their mutual interest to make provision for the purchase and disposition * * * upon the death of either of them" of the 900 shares and any additional shares of the Lennen & Mitchell, Inc., stock acquired by them and that "it is their intention to provide for the purchase price or a part of the purchase price for such stock from the proceeds of life insurance which is or may be payable to the estate of either party, as hereinafter provided."

The agreement provided further, *inter alia*, that neither party should sell or dispose of his shares of such stock or any part thereof without first offering to sell same to the other party to the agreement at a price to be mutually agreed upon; that "for the purpose of carrying this agreement into effect as hereinafter set forth, and to provide for a part of the purchase price of the stock, the parties hereto have caused life insurance in the sum of $200,000 to be placed upon the life of each of the parties hereto as evidenced by" certain designated policies; that the premiums would be paid when due in a manner to be agreed upon between the parties; that the proceeds of the policies should be made payable to the estates of the respective parties "for the purpose of providing a part of the purchase price to be paid for the stock of the party who shall have predeceased the other, and the said sum of $200,000 is to be received on account of the purchase price as if the surviving party had paid the same, and it is agreed that the surviving party shall receive the stock held by the estate of such deceased party in the corporation of Lennen & Mitchell, Inc., as though a direct purchase had been made by such surviving party, it being the intention of the parties hereto and the parties hereto agree for their respective estates that the said sum of $200,000 received by the estate of either party shall be applied on account of the

purchase price for the benefit of the surviving party"; that "the surviving party shall immediately receive and be entitled to the stock" upon payment of the $200,000 insurance proceeds to the estate of the deceased party unless the corporation's tangible assets, excluding book value and good will, show a value of the stock in excess of $200,000, in which event such excess should be paid either in cash or in certain specified installments at the option of the purchaser; that on each party's certificate of stock there be inscribed "Subject to written agreement dated April 30, 1929, between Philip W. Lennen and John T. H. Mitchell"; and that "this agreement shall be binding upon and shall inure to the benefit of the executors, administrators and assigns of the parties hereto."

The certificates of stock of Lennen & Mitchell, Inc., held by the decedent and Lennen were inscribed as provided for by the agreement.

Pursuant to this agreement, in April 1928 Lennen and Mitchell each applied for and secured the issuance of insurance policies in the amount of $200,000 on each of their respective lives. The $200,000 policy on Mitchell's (decedent's) life was made payable to his executors, administrators, or assigns and there was reserved to the insured, without the consent of any beneficiary, the exercise of all rights and privileges under the policy such as change of beneficiary, surrender options, loans, and the receipt of proceeds as endowment. The two policies aggregating $200,000 on the life of Lennen were made payable to his executors, administrators, or assigns, with the same reservation of rights to the insured as those contained in Mitchell's policy.

With regard to the premiums on the $200,000 life insurance policies, Mitchell and Lennen agreed that each would pay the premiums due on the other's insurance. However, that agreement required Lennen to pay a larger amount as premiums because Mitchell was several years older than Lennen and Mitchell voluntarily offered to pay half of that difference so that Lennen's cost for the same protection would be equalized. It having been the custom of Lennen and Mitchell to have Lennen & Mitchell, Inc., issue its checks in payment of many of their personal bills and charge such payments against their personal accounts, the insurance premiums were paid in the same manner. One-half of the total premiums paid on the policies was charged to the personal account of Mitchell and one-half thereof was charged to the personal account of Lennen. These charges to their accounts were offset by credits for salaries and dividends due them from time to time. The policy on Mitchell's life was delivered into the possession of Lennen and the policies on the latter's life were delivered to Mitchell.

The parties have agreed that the proceeds of the $200,000 policy on Mitchell's life, payable to his estate, amounted to $202,666.67.

At or about the time of Mitchell's death the books of Lennen & Mitchell, Inc., showed an indebtedness to it due from the decedent in the amount of $206,648.17. Subsequent to the decedent's death and in order to settle all questions as to the value of the decedent's 900 shares of Lennen & Mitchell, Inc., stock, the sale thereof to Lennen, pursuant to the contract of April 30, 1929, and the amount of Mitchell's indebtedness to the corporation and settlement thereof, Philip W. Lennen, as the party of the first part, and Anna L. W. Mitchell, administratrix of the estate of John T. H. Mitchell, deceased, as the party of the second part, and the decedent's sole heirs and next of kin, as parties of the third part, entered into an agreement dated December 31, 1930. By such agreement those parties mutually agreed, *inter alia*, that the said 900 shares owned by decedent at date of death had a value of $313,771.93 on that date, as provided by the contract of April 30, 1929; that the second party "agrees to sell, transfer, assign and deliver the said 900 shares of stock to the said party of the first part for the sum of $313,771.93 and to apply upon said purchase price the sum of $202,666.67 received by her as said administratrix as the proceeds on the said life insurance policy upon the life of the said John T. H. Mitchell, referred to in said agreement of April 30, 1929, leaving a balance on said purchase price of $111,105.26"; that the first party agrees to purchase the said stock for $313,771.93 and pay forthwith the balance due in the sum of $111,-105.26; and that the first party "agrees that he will procure the said Lennen & Mitchell, Inc. to accept from the said party of the second part hereto the sum of $111,105.26 in full payment, compromise, satisfaction and discharge for any and all indebtedness due or claimed to be due from the said John T. H. Mitchell to the said Lennen & Mitchell, Inc."

The provisions of that agreement of December 31, 1930, were carried out on the same date. Petitioner transferred and delivered the 900 shares of Lennen & Mitchell, Inc., stock to Lennen, who paid the balance of the purchase price due in the sum of $111,105.26 by his certified check, drawn to the order of Anna L. W. Mitchell, administratrix of the estate of John T. H. Mitchell, deceased, and she endorsed the check to the order of Lennen & Mitchell, Inc., in full payment of decedent's indebtedness to that corporation, which executed a general release pursuant to its written agreement of December 31, 1930, with petitioner and other parties in interest.

In the estate tax return petitioner reported the 900 shares of Lennen & Mitchell, Inc., stock as being subject to the agreements of April 30, 1929, and December 31, 1930, and as having a fair market value of $111,105.26 at date of decedent's death. Petitioner also reported the said sum of $202,666.67 as the proceeds of the insurance policy

payable to the estate of the decedent. In his determination of the deficiency the respondent increased the value of the said stock to the amount of $313,771.93 and he made no change with respect to the inclusion of the insurance proceeds of $202,666.67 in the gross estate as reported.

The petitioner contends that the 900 shares of stock owned by decedent at date of death were subject to a binding agreement which definitely limited the value thereof at date of death to the sum of $111,105.26, the amount actually received therefor in excess of the insurance proceeds of $202,666.67, which proceeds were included in the gross estate as reported. In the alternative, petitioner contends that, if the 900 shares of stock should be included in the gross estate at a · value of $313,771.93, then the insurance proceeds of $202,666.67 should be excluded from the gross estate, because such proceeds had to be applied, under the terms of a binding contract, to the purchase price of the stock paid by Lennen and was a burden thereon. Briefly stated, petitioner takes the position that not more than $313,771.93 should be included in the gross estate on account of both the stock and the said insurance proceeds because the estate was not entitled to receive and did not receive both insurance proceeds in the sum of $202,666.67 cash and an amount of $313,771.93 as the value of the stock. The respondent contends that the question of the value of the stock presents one issue and that its value was $313,771.93 at date of death, and, further, that the question of the inclusion in the gross estate of the insurance proceeds presents an entirely separate and distinct issue having no connection with the determination of the fair market value of the stock.

The decedent having died in 1930, the Revenue Act of 1926 as amended by the Revenue Act of 1928 is controlling. The applicable provisions of the 1926 Act are as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death,

    *        *        *        *        *        *        *

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

In our opinion there can be no doubt that the insurance proceeds in the amount of $202,666.67 must be included in determining the value of the decedent's gross estate, as proceeds of insurance, within the meaning of section 302 (g), *supra*. In addition to the fact that at the date of his death the decedent had many incidents of ownership

and the reserved right to change the beneficiary in the insurance policy, which fact would be sufficient to make the value of the policy includable in the gross estate, *Louise C. Moore, Executrix*, 33 B. T. A. 108, and authorities cited therein, the policy was payable to the administratrix of his estate, and the proceeds were received by her and actually became a part of the decedent's gross estate.

However, such insurance proceeds were received by decedent's estate subject to the terms of a valid and binding contract that they be applied to reduce the purchase price to be paid by Lennen for the decedent's 900 shares of Lennen & Mitchell, Inc., stock which by the same contract Lennen was obligated to buy. Those shares, being so burdened, were not subject to the unfettered ownership of the decedent's estate. The effect of the contract was to reduce the value of the estate's interest in such stock by an amount equal to the amount of the proceeds of the insurance policy, and the value of the stock as so reduced must be deemed as its value for estate tax purposes. Cf. *Wilson* v. *Bowers*, 57 Fed. (2d) 682; *M. W. Dobrzensky, Executor*, 34 B. T. A. 305, 312; *Edith M. Bensel et al., Executors*, 36 B. T. A. 246, and authorities cited therein. As so reduced that amount was $111,-105.26, for which amount the decedent's estate was obligated to and did transfer the said shares to Lennen. In our opinion, the value of such shares at the date of decedent's death was, for the purpose of determining the value of his gross estate, $111,105.26, for we must deal in actualities and such amount was the sale price actually received by the estate after the reduction of the amount of the insurance proceeds from the total sale price of the stock. The respondent erred in increasing the value of such stock from $111,105.26, as reported by petitioner, to the amount of $313,771.93.

■ The second issue involves the question of whether the sum of $402,273.70, representing the total proceeds of several insurance policies, on the decedent's life, payable to his business associate, Lennen, is includable in the decedent's gross estate.

Due to the fact that the personal services of both Lennen and Mitchell constituted a vital factor in the success of the advertising business of Lennen & Mitchell, Inc., and that such business would suffer greatly in the event of the death of either of those individuals, they entered into an oral agreement in the spring of 1928, that each would secure life insurance in the amount of $400,000 payable to the other, to compensate the survivor for the financial loss which would be occasioned by the death of either party.

Pursuant to that agreement Lennen applied for and secured the issuance of several life insurance policies on his life in the sum of $400,000, payable to Mitchell as the beneficiary. Also, Mitchell applied for and secured the issuance of six life insurance policies on

his life in the sum of $400,000, payable to Lennen as the beneficiary. Each of the policies so taken out provided, in effect, that if the designated beneficiary should predecease the insured the beneficial interest of the policy would vest in the estate of the insured. The right to change the beneficiary was *not* reserved in any of those policies so taken out by Lennen and the decedent, and there was not reserved any right to obtain loans thereon, or the cash surrender value thereof, or any interest therein, at the date of death which could be exercised without the consent of the beneficiary. The policies so issued on Lennen's life were delivered to Mitchell and the six policies so issued on Mitchell's life were delivered to Lennen, who had possession of them at the date of decedent's death.

Lennen agreed to pay the premiums due on the policies on Mitchell's life and Mitchell agreed to pay the premiums due on the policies on Lennen's life. However, Mitchell voluntarily offered to pay half of the difference between the larger premiums on the policies on his life and the premiums on the policies on Lennen's life so as to equalize their cost for the same amount of protection. The premiums on such insurance policies were paid by Lennen & Mitchell, Inc., and on its books one-half of the total premiums was charged to the personal account of Mitchell and one-half thereof was charged to the personal account of Lennen.

The parties have agreed that the proceeds of the six insurance policies on Mitchell's life amounted to $402,203.70. Those proceeds were paid to Lennen and no part thereof was turned over to the decedent's estate.

In the estate tax return the petitioner did not include any part of the $402,203.70 insurance proceeds in the decedent's gross estate. In his determination the respondent included in the decedent's gross estate the amount of $402,273.70 as the proceeds from the six policies on Mitchell's life, apparently for the reason that the proceeds of each of the six policies were payable to the insured's estate in the event the insured survived the beneficiary. On brief respondent states that the weight of authority does not sustain the inclusion of such insurance proceeds in the gross estate of the decedent. However, he nevertheless contends, without the citation of authority, that the proceeds of the policies remained the property of the insurance company until the date of death and could not be disposed of prior to that event, that consequently the disposition takes effect at death as a testamentary disposition and that, therefore, such proceeds constitute a part of the decedent's gross estate. There is no merit to this contention.

This Board has held in several cases that where the insured did *not* reserve the right to change the beneficiary and at date of death had

**8**

no interest in the policy which he could exercise without the consent of the beneficiary, the proceeds of the policy are not includable in the decedent's gross estate. *Louise C. Moore, Executrix, supra,* and cases therein cited. The fact that the policies provided that the proceeds thereof would become payable to the insured's estate in the event that the beneficiary predeceased the insured, affords no ground for the inclusion of such proceeds in the decedent's estate. Title and possession of the irrevocably designated beneficiary to the proceeds of the insurance policy were fixed beyond the power of the insured to affect and the latter's death did not result in the transfer of any interest from the decedent to the beneficiary of the policy. The decedent's death merely terminated the possible contingency of the beneficiary predeceasing the insured. *Bingham* v. *United States,* 296 U. S. 211; *Helvering* v. *St. Louis Union Trust Co.,* 296 U. S. 39. The respondent erred in including in the decedent's gross estate the amount of $402,273.70 as proceeds of insurance.

*Decision will be entered under Rule 50.*