Thomas C. Boswell, Annie M. Boswell, and Manufacturers National Bank of Troy, New York, Executors of the Estate of William D. Boswell, Petitioners, *v*. Commissioner of Internal Revenue, Respondent.

Docket No. 81811.    Promulgated June 1, 1938.

*J. Robert Sherrod, Esq.*, for the petitioners.
*R. F. Staubly, Esq.*, for the respondent.

**OPINION.**

OPPER: Respondent contends, first, that decedent disposed of certain property in contemplation of death. The action involved in this branch of the proceeding is the transfer by trust indenture dated May 22, 1929, to the Manufacturers National Bank, of the securities therein described. We are required to determine whether "the impelling cause" for that transfer was decedent's contemplation of his death. *United States* v. *Wells*, 283 U. S. 102. "Contemplation" is defined as the "act of the mind in considering with attention." Webster's New International Dictionary, 2d ed. By the trust instrument decedent provided for distribution of the income from the trust property during his life and for its further disposition, as well as that of the corpus, thereafter. Within a short time decedent amended the trust instrument to provide for a different treatment of new investments during his lifetime from that to be applied after he had died. He could not have made these arrangements without "considering with attention" the event of his death. This being so, we assume that decedent was contemplating his death and accept respondent's suggestion that the proof of his sound physical condition does not affect this assumption.

It does not follow, however, that decedent's contemplation of death was the impelling cause of the transfer, and we think the evidence

indicates the contrary. It is undisputed that his primary purpose was to segregate certain of his investments and to have these kept clear of his stock market operations. To accomplish this he conveyed the property to his trustee, with instructions to pay the income to him as long as he lived. This disposition required some provision for treatment of income and principal upon his death. But that provision was itself rather a result than a cause of the transfer, a fact which seems to us to preclude from consideration as the impelling cause any contemplation of death in which decedent may incidentally have engaged. There was here no reserved power of revocation, no comprehensive plan projected or accomplished contemporaneously for the disposition of the remainder of decedent's considerable estate, no manifestation of his intention to surrender direction of the balance of his investments, no accumulation of income pending his death. The circumstances before us are thus fundamentally at variance with those found to be controlling in *Igleheart* v. *Commissioner*, 77 Fed. (2d) 704; *Updike* v. *Commissioner*, 88 Fed. (2d) 807; and *Commissioner* v. *Colorado National Bank of Denver*, 95 Fed. (2d) 160. We have accordingly found that the transfer was not made in contemplation of death.

Respondent contends further that "A transfer with respect to which the decedent reserves the income from the property transferred for life is a transfer that takes effect in possession or enjoyment at or after death." On this point we think the Supreme Court has held to the contrary. *May* v. *Heiner*, 281 U. S. 238; *Burnet* v. *Northern Trust Co.*, 283 U. S. 782; *Morsman* v. *Burnet*, 283 U. S. 783; *McCormick* v. *Burnet*, 283 U. S. 784. And, the disputed transfer having taken place in 1929, the provisions of the Joint Resolution of March 3, 1931, and of section 803 (a) of the Revenue Act of 1932 do not bear upon the question, since they "apply only to transfers with reservation of life income made subsequent to the dates of their adoption respectively." *Hassett* v. *Welch*, 302 U. S. 674.

No contention is advanced that the corpus of the trust property, decreased by the value of the wife's life estate, was transferred at decedent's death by virtue of the terms of the trust instrument and its reference to decedent's "heirs at law and next of kin." See *Doctor* v. *Hughes*, 225 N. Y. 305; 122 N. E. 221; *Livingston* v. *Ward*, 247 N. Y. 97; 159 N. E. 875; *Berlenbach* v. *Chemical Bank & Trust Co.*, 260 N. Y. 539; 184 N. E. 83; Restatement of the Law of Trusts, § 127; *Security-First National Bank of Los Angeles, Executor*, 35 B. T. A. 815. Nor does the record disclose any facts upon which an appropriate determination of value could be predicated. We accordingly refrain from discussion of this question, and, for the reasons stated, conclude that the trust property is not subject to inclusion in decedent's gross estate.

The supposed justification for including the proceeds of the two insurance policies in gross estate is, according to respondent's brief, that decedent possessed "attributes of ownership" consisting of the right to change beneficiaries, to obtain the surrender value, and to borrow upon the security, of the policies. In each of these respects we think the conclusion must be otherwise.

Whether or not the proceeds of these policies are to be included in the gross estate depends, regardless of the time or terms of their issuance, upon whether decedent had any interest in them at the time of his death. *David A. Reed et al., Executors*, 24 B. T. A. 166; *Estate of John T. H. Mitchell*, 37 B. T. A. 1; *Chase National Bank* v. *United States*, 278 U. S. 327. Respondent has himself so construed the law. "The statute requires the inclusion in the gross estate of the decedent of the proceeds of any policy * * * not receivable by or for the benefit of decedent's estate * * * regardless of when the policy was * * * issued, *if the decedent possessed at the time of his death any of the legal incidents of ownership*." (Italics supplied.) Regulations 80, art. 27. That this qualification is intentional and restrictive appears from the elimination, at the time of its adoption, of a previous provision reading: "However, *irrespective of the retention of such legal incidents of ownership*, all insurance * * * must be included in the gross estate (1) of any decedent dying after the enactment of the Revenue Act of 1924 where * * * the beneficiary receiving the proceeds was named, after the enactment of the Revenue Act of 1918 * * *." (Italics supplied.) T. D. 4296, Aug. 6, 1930, IX-2 C. B. 427.

After his final designation of beneficiaries, decedent had, throughout the remainder of his life, no further power in that respect. His authority to alter the designation so made was explicitly limited "during the lifetime of Annie M. Boswell and Helen R. Boswell [the wife and daughter], or either of them" by the requirement that "such right is not to be exercised without their written consent." This provision was tantamount to a surrender of control during the lifetime of decedent's wife and daughter, they being beneficiaries under the policies. *David A. Reed et al., Executors, supra; Reinecke* v. *Northern Trust Co.*, 278 U. S. 339. Since both survived him, decedent had no such power at the time of his death. "The decedent's death merely terminated the possible contingency of the beneficiary predeceasing the insured." *Estate of John T. H. Mitchell, supra.*

Nor was there at death any remnant of the privilege of surrender for cash. The policies provide, in this respect that "* * * the owner shall have the following options: 1. To surrender the Policy to the Company * * * for its cash surrender value * * *." Some significance may be attached to the use of the word "owner"

rather than "insured" in defining the person so privileged. *Pennsylvania Co. etc.* v. *Commissioner*, 79 Fed. (2d) 295; certiorari denied, 296 U. S. 651. But, in any event, absence of the power to change beneficiaries in itself deprives an insured of authority in his own right to obtain the surrender value. *Levy's Estate* v. *Commissioner*, 65 Fed. (2d) 412; *Walker* v. *United States*, 83 Fed. (2d) 103, 110. True, the cases last cited construe the policies in litigation according to the law of the State of New York; but we think that law is also applicable here. These policies show that they were obtained through "James Q. Barcus, Genl. Agt., * * * Albany, N. Y." and that decedent at the time of application was a resident of New York. He died a resident of that state. Under these circumstances, the New York law is applicable. *Louise C. Moore, Executrix*, 33 B. T. A. 108, 112. Even, however, if it be contended that New Jersey authority should be followed on the ground that the insurer was incorporated there and that the policies appear to have been approved at its home office in Newark, no different result would be justified. See *Landrum* v. *Knowles*, 22 N. J. Eq. 594; *Sullivan* v. *Maroney*, 77 N. J. Eq. 565; 78 Atl. 150.

What has been said as to a surrender of the policies applies with equal force to their use as security for a loan. Each policy provides: "The Company * * * will loan up to the limit secured by its Cash Surrender Value upon receipt of the Policy and a satisfactory Certificate of Loan." It must be apparent that the "Cash Surrender Value" could not be pledged by one not entitled to receive it, and that no "Certificate of Loan" could be "satisfactory" which was not executed by the real persons in interest. "The rule which forbids the surrender for cash, in violation of the beneficiary's interest, equally forbids the insured from obtaining a loan without consent of the beneficiary." *Levy's Estate* v. *Commissioner*, *supra*, 415.

We are accordingly unable to sustain respondent's determination that the two life insurance policies should be included in decedent's gross estate.

*Decision will be entered for the petitioners.*