No. 15,219.

ESTATE OF HAMILTON

HAMILTON ET AL. *v.* PEOPLE EX REL. IRELAND ET AL.
(154 P. [2d] 1008)

Decided January 8, 1945.

142

Mr. G. Dexter Blount, for plaintiffs in error.

Mr. Gail Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Berton T. Gobble, Assistant, Mr. Hubert D. Henry, Assistant, for defendants in error.

*En Banc.*

Mr. Chief Justice Young delivered the opinion of the court.

THE Inheritance Tax Commissioner filed a report in the estate of Gavin W. Hamilton, deceased, pending in the county court of the City and County of Denver, on which an inheritance tax was assessed against Kilpatrick Brothers Company, a corporation, aggregating, with costs and old age pension tax, $1,863.50. Kilpatrick Brothers Company and Molly G. Hamilton, widow and sole heir of deceased, individually and as administratrix of decedent's estate, filed objections to the report and the assessment of the tax. Trial of the issues raised by the objections was to the court on stipulated facts. The court overruled the objections and entered judgment against Kilpatrick Brothers Company for the amount of the tax assessed. The protestants seek a reversal of the judgment and specify two points for reversal, only one of which, in view of our conclusions thereon, requires consideration, namely, that on the record before the county court, failure to sustain the protestants' objections was error.

The stipulated facts pertinent to this review are as follows:

An insurance policy was issued by the Travelers Insurance Company to Gavin W. Hamilton, on November 13, 1925, containing three separate contracts to pay money: (1) To pay $75,000 upon maturity of the policy; (2) to pay $25,000 additional if assured's death is accidental; (3) to pay the assured a monthly indemnity of $500 when totally disabled. This policy was assigned to Kilpatrick Brothers Company by written assignment as follows:

"The undersigned Gavin W. Hamilton, the assured, and the undersigned, Molly G. Hamilton, beneficiary in life insurance policy issued by The Travelers Insurance Company of Hartford, Conn., No. 1179057, under date of Nov. 19, 1925, on the life of said assured, the principal amount of said policy being the sum of $75,000.00 for the purpose of securing any indebtedness now or hereafter owing from Hamilton and Gleason Company, a

Corporation, of Denver, Colorado, to Kilpatrick Brothers Company, a Corporation, of Beatrice, Nebraska, and any renewals of said indebtedness, do hereby sell, assign, transfer and convey unto the said Kilpatrick Brothers Company, all our respective rights of every kind in and to said policy, including all rights of election of benefits thereunder and the exercise of any rights thereunder, hereby constituting and appointing the said Kilpatrick Brothers Company, and or any officer thereof our true and lawful attorney in fact, in our names, place and stead, to make any such election or exercise any right accruing to us or either of us, under said policy, including the right to pledge the said policy for any loan or loans up to the full loan value thereof, hereby ratifying in advance all that said attorney or attorneys in fact, or either of them, shall do by virtue of this instrument, and within the limits of the powers herein conferred. And the said attorney or attorneys in fact, or any of them, are hereby given such power irrevocably, which shall include the right to execute in our name, place and stead, any loan agreement and to receive and receipt for any monies due or coming due under said policy; and the said insurance company issuing said policy shall not be bound to inquire as to the right of the said Kilpatrick Brothers Company, or of any of said attorneys in fact to receive such money or exercise any power herein granted.

"In witness whereof, we have hereunto set our hands January 19, 1927.

Gavin W. Hamilton,
Molly G. Hamilton."

In 1936, decedent became so disabled as to be entitled to benefits and waiver of premium under the disability provisions of the policy, and so continued to the date of his death. In June, 1937, Kilpatrick Brothers Company authorized the Travelers Insurance Company to pay the disability benefits provided by the policy to

the decedent, under an agreement between Kilpatrick Brothers Company, Hamilton and Gleason Company, and the decedent, that the money so paid should be received by Kilpatrick Brothers Company and applied upon the indebtedness of Hamilton and Gleason Company to Kilpatrick Brothers Company. The decedent thereupon made claim for disability benefits. The claim was allowed by Travelers Insurance Company. as beginning December 15, 1936. Travelers Insurance Company paid such monthly disability benefits for the period extending from December 15, 1936, to September 15, 1940. The checks which the insurer issued to the decedent were endorsed by the decedent and were cashed by Hamilton and Gleason Company, and the proceeds applied on its indebtedness to Kilpatrick Brothers Company. Decedent did not receive any of the money realized from the cashing of those checks. The obligation of the company to pay disability benefits was in part enforced by suit, but as payment ultimately was made by the company, we deem the fact that in part it was made under compulsion immaterial.

Hamilton and Gleason Company paid all the premiums that were ever paid on the policy assigned to secure its indebtedness to Kilpatrick Brothers Company from the time of its issuance to the policyholder's death.

The commissioner does not claim that the proceeds of the policy were subject to claims against decedent's estate and hence taxable; but that they are taxable under that portion of the statute providing, "the excess over the sum of seventy-five thousand ($75,000.00) dollars, * * * of the net proceeds of all insurance policies * * *, payable * * *, to or for the use of named or described beneficiaries, taken out upon the life of the decedent and with respect to which the decedent at the time of his death possessed any of the incidents of ownership, shall be taxable." S.L. '39, chap. 118, §6.

It should be observed that the foregoing portion of the statute relates to *life insurance polices* and the

proceeds from them. A life insurance policy is one under which the proceeds are payable on the contingency of death. What was received by the policyholder, or to which he became entitled during his lifetime, either in the form of payments for disability or by way of waiver of premiums on the policy, whatever it may have been, was not "proceeds from a life insurance policy." Such payments were made on contingencies in the lifetime of decedent and not on the contingency of his death. Such proceeds therefore, were not within the statute. This disposes of the contention that the $7,362.46 paid by the insurance company under compulsion in settlement of a suit was taxable, adversely to the state.

The question determinative of the issues before us is whether as to the $75,000 policy on his life, Hamilton, the deceased, possessed any of the incidents of ownership at the time of his death. It was taken out on the life of decedent and payable to his beneficiary, the wife of decedent. The policyholder and the beneficiary assigned the policy as security for the payment of indebtedness from Hamilton and Gleason Company to Kilpatrick Brothers Company, accrued and to accrue during the lifetime of the policyholder. The stipulation entered into between the parties shows that at all times subsequent to the assignment the indebtedness so secured greatly exceeded the maturity amount of the policy. Such was the situation at the time of decedent's death. While assigned, the policyholder could not change the beneficiary; he could not borrow against the reserves; he could not reclaim or repossess the policy except by payment of the full amount of the indebtedness exceeding the maturity value of the policy. He could do nothing with the policy that would affect the economic status of himself or of any other person with respect to it except to mature the policy by his death.

It is evident from the wording of the statute that

the General Assembly had in mind cases in which a policy might be taken out on the life of a policyholder for a designated beneficiary and still the proceeds of the policy not be subject to tax. Otherwise, the words in the statute "with respect to which the decedent at the time of his death possessed any of the incidents of ownership" would be meaningless. These words were intended to exclude all policies from the operation of the statute except those with respect to which an incident of ownership has been retained. An insurance policy is a chose in action. Ownership of a chose in action carries with it the primary right to enforce in whole or in part the contract in accordance with its terms. At the time of his death decedent had no such right; he had for a valuable consideration assigned it away. The only right remaining to him and the only right the commissioner contends he had, if such may be called a right, was to pay Kilpatrick Brothers Company the amount of Hamilton and Gleason Company's indebtedness, if he was financially able so to do, thus depleting his estate that would be taxable at his death by the amount of such payment. As a matter of fact, the record discloses that neither decedent nor Hamilton and Gleason Company were at the time of decedent's death financially able to pay the indebtedness secured by the policy to Kilpatrick Brothers Company. Since the exercise of this so-called right would have decreased decedent's estate to the amount of the payment and would have deprived the commissioner of the right to tax on such an amount, it does not appeal to us as sound logic that the failure of decedent to exercise such so-called right should authorize the commissioner now to levy and collect a tax in an amount which he never could have realized if the right had been exercised.

 Unless the statute too clearly to permit of doubt of the legislative intention so to do, requires that a tax be collected for the privilege of receiving property

or money by the death of another, either directly or indirectly by means of an insurance policy, when no property or money, other than a reimbursement for money theretofore advanced by the recipient is in fact received, the tax ought not to be imposed. While we held in *Millikin v. People,* 106 Colo. 6, 102 P. (2d) 901 and *People v. Estate of Waterman,* 108 Colo. 263, 116 P. (2d) 204, that the tax is imposed on the receiving of property by the death of another, making it an excise tax, the incidence of which is on the receiver, these cases are not authority for the proposition that one who merely receives payment for his debt by the death of another, that is reimbursement for money which he has previously advanced, is to be taxed for the privilege of having his debt paid in the same manner and amount as one who receives the money as a gratuity and without having given compensation for it. To tax the receiving of the money in the latter cases is taxing a privilege; to tax it in the former case is taxing a right. In the one case a mere privilege is reduced; in the other a right is in part destroyed. We are of the opinion that Kilpatrick Brothers Company was not, in receiving payment of its debt out of the insurance policy on Hamilton's life, receiving money in the sense contemplated by the statute to make it liable to payment of the succession tax.

██ ██ An insurance policy being a chose in action is a property right, often described as intangible property. Incidents of ownership with regard to a chose in action are rights or privileges to deal with it as one may deal with his own property; for example, the right to destroy it by failing to perform any conditions essential to the maintenance of its character as a chose in action as by not paying premiums; or to surrender it and receive the reserve value of the policy; to borrow against the reserves; to change the beneficiary; in short, to exercise his will with respect to the policy in some one or more of the ways in which one possessing a

chose in action unfettered by any rights of a second party might deal with the same. The value of the chose in action consists of the sum total of the incidents of ownership. The commissioner points out only one so-called incident of ownership and that was the privilege which Hamilton had to pay the indebtedness the policy secured, which was in excess of the maturity value of the policy, and thus release the policy to him. But the exercise of such right as heretofore pointed out would have resulted in depleting decedent's estate to a greater extent than the maturity value of the policy. Furthermore, the right to pay the debt and release the policy and its proceeds, strictly speaking, did not grow out of the policy or constitute an incident of its ownership but rather it grew out of and was an incident of the contractual arrangement between Hamilton, his wife, Hamilton-Gleason and Company, and Kilpatrick Brothers Company, to which arrangement the insurance company had consented and agreed to be bound in payment of the proceeds of the policy on its maturity. The contractual relationship under the attending circumstances was what deprived Hamilton of any incident of ownership of the policy. In no real or true sense did Hamilton at the time of his death have it within his power to pass by means of the policy any economic benefit or thing of value without at the same time surrendering more in value of his estate than the commissioner now seeks to tax as the value of the policy. We think it was not the legislative intent to impose a tax when there exists only a mere naked right to recover control of an insurance policy when no control of the policy in fact exists by means necessarily barren of any economic benefit to the policyholder and which necessarily results in the event of his death in the scaling down of the tax on his estate in an amount equal to the tax imposed on the proceeds of the policy.

The fact that the situation depriving the policy-

holder of any real incident of ownership in the policy was brought about by assigning it as collateral for a loan that was greatly in excess of its maturity value, we think under the circumstances shown by the record is immaterial. The effect of the transaction in depriving the policyholder of any real ownership in the policy rather than the means by which that effect was brought about should be the controlling factor in determining whether the proceeds are subject to the tax. Applying such principle, the commissioner was without authority to impose the tax and the judgment sustaining its imposition is reversed.