No. 20916.

THE PEOPLE OF THE STATE OF COLORADO AND
NEIL TASHER, INHERITANCE TAX COMMISSIONER *v.*
ROBIN THURLOW LACY, EXECUTOR OF THE ESTATE OF
F. THURLOW LACY, DECEASED.

(404 P.2d 260)

Decided July 19, 1965.

Duke W. Dunbar, Attorney General, R. Robert Irwin, Jr., Assistant, for plaintiffs in error.

Holland & Hart, William P. Cantwell, Jay W. Tracey, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will refer to plaintiffs in error as the Commissioner, and to defendant in error as the executor. The case involves an assessment of the Colorado inheritance tax in the estate of one F. Thurlow Lacy who died June 11, 1960, and whose estate was opened in the probate court of the City and County of Denver.

A Colorado Inheritance Tax Application, verified by the executor, claiming the optional valuation was received by the Inheritance Tax Division of the State of Colorado. Under "Schedule E" of this application, as item 9 thereof, there appears the following:

"9. 960 shares Stearns-Rogers Manufacturing Co., Common Stock, in the name of the decedent, on deposit with the Colorado National Bank of Denver, Trustee for stock repurchase plan of Stearns-Roger Manufacturing Co., Mutual Benefit Life Insurance Co. and Aetna Life Insurance Co. policies with a face amount totaling $22,400 and reported in Schedule H, as well as dividends, premium and interest thereon totaling $594.85, issued on the life of the decedent owned by Stearns-Roger Manufacturing Co. and assigned to Colorado National Bank as Trustee in exchange for the equivalent value of the above 960 shares of common stock at $62.00 per share.

"Total value of stock ........................$59,520.00
"Less value of insurance proceeds
    used to repurchase stock by cor-
    poration (See Schedule H) ........ 22,994.85
"Value includible in decedent's
    estate ...............................................$36,525.15"

Under Schedule H (Insurance) of the Application, items 9 through 13, it is provided:

"Policies owned by Stearns-Roger Manufacturing Co., Colorado National Bank, Trustee — See Schedule E, item 9*

| | | | | | |
|---|---|---|---|---|---|
| "9 Mutual Benefit Life | | 3022079 | Ruth Rogers Lacy | $ | 2,450.00 |
| 10 " | " | " 3063220 | " | | 3,600.00 |
| 11 " | " | " 1755693 | " | | 2,450.00 |
| 12 " | " | " 3045619 | " | | 700.00 |
| 13 Aetna Life Ins. Co. | | N-1,585,124 | " | | 11,200.00 |

*These items are payable to beneficiary as insurance proceeds, with all incidents attached thereto, and are therefore returned herein as such rather than as personal property."

On October 16, 1962, the Commissioner filed the report with the County Court, in which he included as a part of decedent's estate 960 shares of common stock of Stearns-Roger Manufacturing Company and reported the value thereof at $59,520.00.

The executor filed in the County Court his Objections and Protest to the report of the Inheritance Tax Commissioner, and prayed that the "Report of Inheritance Tax Commissioner" be modified by reducing the 960 shares of common stock of Stearns-Roger, with a valuation of $59,520.00, to 589.2 (approx.) shares of common stock with a valuation of $36,525.15. In addition he prayed that $2,412.37 of Aetna Life Insurance Policy No. N-1,585,124 be added to the Report of the Inheritance Tax Commissioner. After hearing on the objections of the executor, the County Court sustained the objections and dispensed with a motion for a new trial.

The controversy between the executor and the Commissioner arises as a result of a trust agreement wherein the Colorado National Bank acted as Trustee and the Stearns-Roger Manufacturing Company and some of its employees participated in the Trust. The trust agreement was originally set up in 1937, at which time the decedent, who was an employee of Stearns-Roger, became a party to the agreement. The agreement was amended from time to time, with the last amendment having been made sometime in 1957.

The trust, with its subsequent amendments, concisely stated envisions the following agreement: The Colorado National Bank is the trustee, and Stearns-Roger and various employee stockholders of that corporation are parties thereto. These employee stockholders agreed to deposit their shares of stock with the Colorado National Bank, and Stearns-Roger agreed to obtain life insurance on the life of each employee stockholder in an amount equal to $28.00 per share owned by the employee stockholder. The corporation agreed to pay the insurance premiums and the insurance policies would be the sole

property of Stearns-Roger assigned to the Colorado National Bank as trustee. Each employee stockholder had the right to inform the trustee of his ultimate beneficiary.

If an employee stockholder should die while a party to the trust, the trustee bank collected the insurance proceeds from the insurance companies and then awaited the decision of Stearns-Roger as to whether it would elect to purchase, with the insurance proceeds, the equivalent shares of stock deposited with the bank by the employee stockholder. If Stearns-Roger failed to elect to purchase within 90 days after the death of an employee, the bank, pursuant to the amendment to the trust dated the 9th day of January, 1957, was required to use the insurance proceeds to purchase for Stearns-Roger the number of shares of common stock as such proceeds would purchase, and then deliver decedent's remaining shares to his estate. In addition to the use of the insurance proceeds, Stearns-Roger had the right to elect to purchase any or all of the shares of stock not purchased by the insurance proceeds. The purchase price per share for the shares of stock held in trust or otherwise was to be determined by a certain formula as set forth in Article 4 of the Articles of Incorporation of Stearns-Roger. Further, should the insurance proceeds *exceed* the equivalent value of stock held by the Trustee, the balance of the proceeds would be paid to Stearns-Roger and not to a person named by the deceased employee.

In the case at bar, the decedent had on deposit with the Colorado National Bank 960 shares of common stock of Stearns-Roger, valued at $59,520.00. The corporation had caused $22,994.85 worth of life insurance, including dividends and interest, to be issued on the life of the decedent. The executor reported only $36,525.15, or 589.2 shares, as forming a part of decedent's taxable estate, and contended that the remaining 370.8 shares are not a part of his estate and hence not subject to the Colorado inheritance tax.

It is the contention of the executor that those shares

of stock purchased by the insurance proceeds should not be included in decedent's estate for the reason that the insurance proceeds were payable to the beneficiary named by the decedent and the decedent held incidents of ownership in the policies. Further it is argued that the shares purchased by the insurance proceeds did not form a part of the estate at death for the reason that decedent's interest terminated at death and there was an automatic assignment of the shares to Stearns-Roger.

The trial court concluded, as a matter of law, that the decedent's interest in the stock purchased by the trustee with insurance proceeds was not includable in decedent's estate and was not conveyed from the decedent's estate in a taxable transfer. The trial court further concluded that the decedent held incidents of ownership in the insurance policies and the proceeds were includable in his estate as "proceeds of insurance" and hence subject to the $75,000.00 exemption provided by the pertinent statute. To these conclusions of law the Commissioner assigns error.

The attorney general argues on behalf of the Commissioner that all 960 shares of stock owned by decedent, which were on deposit with the Colorado National Bank, formed a part of decedent's estate at the time of his death, and are thus subject to the Colorado inheritance tax laws and to the imposition of an inheritance tax.

The executor admits that 589.2 shares of the stock are properly included as taxable assets of decedent's estate. This admission is made for the reason that the shares were not purchased by Stearns-Roger with "insurance proceeds."

Apparently, the trial court concluded that the shares which were purchased by the corporation and paid for by using money received from insurance policies carried by the employer corporation on the life of its stockholder employee, were entitled to different treatment. It is asserted in justification of this position that the widow of the deceased (the ultimate beneficiary) did

not receive shares of stock owned by her husband at the time of his death, but actually received cash derived from insurance policies. With this position we cannot agree.

■ We hold that immediately prior to his death the decedent was the owner of 960 shares of stock of Stearns-Roger. We further hold that immediately following his death decedent's taxable estate consisted of the identical 960 shares of stock. Moreover, we hold that immediately following his death his taxable estate in this connection did not "automatically" become 589.2 shares, plus tax exempt proceeds of insurance policies. The Commissioner did not assess a tax upon the proceeds of insurance policies.

It is our view that the 960 shares of stock owned by F. Thurlow Lacy were at all times held by him subject to the right of Stearns-Roger to repurchase them, and that this condition was existent without reference to the trust agreement. By the terms of the Articles of Incorporation, under the authority of which the stock was issued, the corporation had the right to repurchase the stock, and that right was made to appear on the face of the stock certificates. The trust agreement enlarged upon the "repurchase" program by setting up the life insurance arrangement. In the trust agreement it was expressly provided that:

"This policy shall be the sole property of Stearns-Roger, naming the Colorado National Bank as beneficiary and be deposited with the certificates in this trust."

■■ During his lifetime Lacy, the insured, could not make any change in the beneficiary to whom the insurance company was obligated to make payment upon his death. These moneys were irrevocably payable to the Colorado National Bank. The bank was required to comply with the terms of the trust by using the funds received in paying for the stock owned by the deceased, or in paying the corporation in cash the amount of any excess remaining after buying the stock on deposit with

the bank. All responsibilities and obligations of the bank arose out of terms and conditions of the trust agreement and no insurance company is a party thereto. If more stock was on deposit than could be purchased with funds produced from the insurance policy, the company had ninety days within which to purchase the excess stock. If within that period of time the company did not buy it, the bank would deliver it to the estate of the deceased as an asset. At that time it was no longer subject to the right of Stearns-Roger to repurchase. The only right which Lacy had was the right to name the person who should be paid the sum due as the purchase price of the stock, and this right is a contractual one arising exclusively out of the trust agreement and nothing contained in the insurance policies has anything to do therewith. The value of the stock was to be fixed by a formula approved in the trust agreement. This power in Lacy to name the recipient of the price to be paid for a stock purchase is not "an incident of ownership" in the policy of insurance which Stearns-Roger had caused to be issued upon his life as a device by which the company would have money available with which to pay the purchase price of the stock.

The case of *Hamilton, et al. v. People ex rel. Ireland, et al.*, 113 Colo. 141, 154 P.2d 1008, relied on by the executor, is clearly distinguishable upon the facts. Actually that case clearly demonstrates that Lacy at no time was possessed of an "incident of ownership" in the insurance policies. There, one Hamilton was the owner and holder of an insurance policy on his own life. He assigned the policy and all rights therein to secure the payment of a debt. After the assignment he could do nothing with the policy "that would affect the economic status of himself or of any other person with respect to it except to mature the policy by his death." In the instant case Lacy at all times could do nothing with the policies owned by Stearns-Roger "that would affect the economic status of himself or any other person," with

respect to any obligation arising out of an insurance policy "except to mature it by his death." This court in *Hamilton* held specifically that after the assignment of the policy by Hamilton to secure a debt, he no longer was possessed of an "incident of ownership" in the policy. This court said:

"* * * Furthermore, the right to pay the debt and release the policy and its proceeds, strictly speaking, did not grow out of the policy or constitute an incident of its ownership but rather it grew out of and was an incident of the contractual arrangement between Hamilton, his wife, Hamilton-Gleason and Company, and Kilpatrick Brothers Company. * * *"

In the instant case the claimed "incident of ownership" did not grow out of the policy "but rather it grew out of and was an incident of the contractural arrangement" namely, the trust agreement. This court held in the *Hamilton* case that the person who was paid his debt out of the proceeds of a life insurance policy, which had been assigned to him during the lifetime of the debtor, did not receive money in the sense contemplated by the inheritance tax statute so as to make him liable for the payment of a succession tax. The opinion in that case defines "incidents of ownership" in a chose in action which in turn points up the fact that in the instant case Lacy was not the holder thereof. We quote from the opinion the following pertinent language:

"An insurance policy being a chose in action is a property right, often described as intangible property. Incidents of ownership with regard to a chose in action are rights or privileges to deal with it as one may deal with his own property; for example, the right to destroy it by failing to perform any conditions essential to the maintenance of its character as a chose in action as by not paying premiums; or to surrender it and receive the reserve value of the policy; to borrow against the reserves; to change the beneficiary; in short, to exercise his will with respect to the policy in some one or more ways in

which one possessing a chose in action unfettered by any rights of a second party might deal with the same.* * *"

■■ The insurance policies issued upon Lacy's life were not assets of the deceased. They were assets of the corporation, and served the interests of the corporation in that they provided money with which to purchase the stock owned by the deceased. All the stock owned by the deceased was subject to the inheritance tax laws of the State of Colorado, and the trial court erred in holding to the contrary.

The judgment is reversed.

MR. JUSTICE SUTTON dissents.

MR. JUSTICE SUTTON dissenting.

I respectfully dissent.

What we have here is a buy and sell agreement of a type often used in business represented by a revolving stock repurchase plan funded by life insurance.

Lacy's type of restricted ownership of the revolving stock in question and his indicia of ownership in the insurance policies, if any, are governed as to the stock by both the Trust Agreement and the Articles of Incorporation, and as to the insurance, by the Trust Agreement only.

I will not set out in detail the many limitations imposed on the stock, for it is enough to point out that its transfer or sale was highly restricted with Stearns-Roger having the first right to purchase all of it during Lacy's lifetime and the same right to purchase all of it after his death, except that if it failed to purchase all the stock after death, then the following part of the Trust Agreement became effective:

"If Stearns-Roger does not exercise its option to purchase, the Bank (i.e., the Trustee) *shall use the insurance proceeds* to purchase for Stearns-Roger the number of shares of common stock at the then option price as such proceeds will purchase *and shall deliver* certificates for

the balance of the deceased stockholder's shares to his estate"; (Trust Amendment dated January 9, 1957.)

In the instant case Stearns-Roger did not exercise its initial option to purchase and the Trustee, as required, did use the insurance proceeds to acquire 370.8 shares of the stock valued under an agreed upon formula.

It seems to me that whatever number of shares of stock were redeemable by the Trustee at any given moment, due to the insurance proceeds available, were subject to what might be termed a reversionary interest in Stearns-Roger and so never came into Lacy's estate. Or, put another way, regardless of the form of the transaction, in legal effect, he had only a life estate in the number of shares of his stock that the Trustee *had to* purchase for Stearns-Roger at his death.

In order to determine whether, for inheritance tax purposes, it is cash or insurance proceeds that is now being received by Lacy's designated beneficiary under an optional insurance payment plan, we have to determine whether Lacy had any indicia of ownership in the policies. The majority opinion says he had none and I conclude, from the wording of the Trust Agreement, that he had sufficent indicia. For example, the amendment of December 5, 1951, to the Trust Agreement stated in pertinent part:

"SECOND: * * * This insurance shall be the sole property of Stearns-Roger — assigned to the Colorado National Bank, as Trustee, and it shall be deposited with the Bank and held with the stock certificate in this Trust. *Each stockholder shall have the right at any time and from time to time to designate and to change the ultimate beneficiaries and basis of benefit payments with respect to the insurance on his life.*" (Emphasis supplied.)

And, another Section provided in pertinent part that:

"FOURTH: Should any stockholder desire to dispose of all or any part of his stock in Stearns-Roger, or for any cause, including discharge, leave its employ, the op-

tion of repurchase by the company contained in the Articles will apply. If * * *. *In either event, the employee shall have the option to purchase for cash the insurance policies on his life at the cash surrender value."*

In my view Lacy's right "to designate and to change the ultimate beneficiaries and basis of benefit payments," as set forth supra, did create such an indicia of ownership in him in the insurance policies as to require the proceeds thereof to be accounted for in his estate as insurance proceeds under C.R.S. '53, 138-4-9, which reads in pertinent part as follows:

" * * *

"The excess over the sum of seventy-five thousand dollars, when paid immediately, or the excess over the sum of seventy-five thousand dollars of the commuted value and remainder thereof if paid in installments, of the net proceeds of all insurance policies and insurance contracts with insurance companies, payable either directly or through the medium of a trustee, to or for the use of named or described beneficiaries, taken out upon the life of the decedent and with respect to which the decedent at the time of his death possessed any of the incidents of ownership, shall be taxable. * * * "

The trial court in the instant case relied upon *Mitchell v. Commissioner,* 37 B.T.A. 1 (1938) which, in turn, reaffirmed *Dobrzensky v. Commissioner,* 34 B.T.A. 305 (1936). Both of those cases were different on their facts primarily because indicia of ownership of the insurance policies were clearly present and to have held otherwise than the Board did would have resulted in dual taxation at the time they were decided. The principle involved in the above two federal cases, though, which principle by analogy can be applied here, is that by holding that the insurance was includable in the decedent's gross estate the legal effect of the contracts involved *was to reduce the value of the estate's interest in the stock transferred by an amount equal to the insurance proceeds, and, only such reduced stock value was includable*

*in decedent's estate as stock.* Though our state inheritance tax is a tax on the transfer of property, and the federal estate tax is a tax on the value in an estate, such a distinction is unimportant in applying, as I would do, the *Mitchell* principle here.

The majority opinion discusses *Hamilton v. People, ex rel.,* 113 Colo. 141, 154 P.2d 1008 (1945) and distinguishes it from the instant case, but in so doing it points up again that it does not believe that Lacy had any incidents of ownership in the policies in issue here, whereas I do. One of the indicia mentioned in *Hamilton* is the right "to change the beneficiary," and I contend that Lacy had that right and that the Bank was not the true beneficiary. It was merely a trustee or nominee with no beneficial interest in the policies. The rule is that the holder of the naked legal title to property, who has no beneficial interest therein, is not the sole and unconditional owner thereof within the meaning of an insurance policy provision. 4 Appleman, INSURANCE LAW AND PRACTICE, § 2459. In any event, in *Hamilton* the court pointed out that it decided that case on a "contractual relationship under the attending circumstances," and that is what I would do here.

The most difficult problem, as I see it here, is whether one can have indicia of ownership in an insurance policy solely by an extraneous contract where nothing appears in the policy which nominally is solely owned by another. Under the facts here I would say "yes." This is so because the "sole property of Stearns-Roger" clause in the Trust Agreement, in my view, has to be read together with the other language in that Agreement. Other language shows that Stearns-Roger's ownership of the insurance was in fact not 100% complete because of Lacy's rights to designate and change beneficiaries and payments.

In conclusion, I believe that what happened in the instant case is that Lacy's rights *under the Trust Agreement* gave him sufficient equitable indicia of ownership

in the policies under the attending circumstances and, regardless of the policy wording, to transmute by equitable conversion, the re-transferred stock into insurance proceeds. Cf. cases and comments cited in Vol. 2, Casey, *"Tax Control,"* published by Institute For Business Planning, §§ 3913.1 and 3913.2 concerning "Corporate-Owned Life Insurance"; and, *Internal Revenue Cumulative Bulletin,* Index Digest, 1957-60, page 1126. I would, therefore, affirm the judgment of the trial court.