Mr. Justice Sutton
dissenting.
I respectfully dissent.
What we have here is a buy and sell agreement of a type often used in business represented by a revolving stock repurchase plan funded by life insurance.
Lacy’s type of restricted ownership of the revolving stock in question and bis indicia of ownership in the insurance policies, if any, are governed as to the stock by both the Trust Agreement and the Articles of Incorporation, and as to the insurance, by the Trust Agreement only.
I will not set out in detail the many limitations imposed on the stock, for it is enough to point out that its transfer or sale was highly restricted with Stearns-Roger having the first right to purchase all of it during Lacy’s lifetime and the same right to purchase all of it after his death, except that if it failed to purchase all the stock after death, then the following part of the Trust Agreement became effective:
“If Stearns-Roger does not exercise its option to purchase, the Bank (i.e., the Trustee) shall use the insurance proceeds to purchase for Stearns-Roger the number of shares of common stock at the then option price as such proceeds will purchase and shall deliver certificates for *579 the balance of the deceased stockholder’s shares to his estate”; (Trust Amendment dated January 9, 1957.)
In the instant case Stearns-Roger did not exercise its initial option to purchase and the Trustee, as required, did use the insurance proceeds to acquire 370.8 shares of the stock valued under an agreed upon formula.
It seems to me that whatever number of shares of stock were redeemable by the Trustee at any given moment, due to the insurance proceeds available, were subject to what might be termed a reversionary interest in Stearns-Roger and so never came into Lacy’s estate. Or, put another way, regardless of the form of the transaction, in legal effect, he had only a life estate in the number of shares of his stock that the Trustee had to purchase for Stearns-Roger at his death.
In order to determine whether, for inheritance tax purposes, it is cash or insurance proceeds that is now being received by Lacy’s designated beneficiary under an optional insurance payment plan, we have to determine whether Lacy had any indicia of ownership in the policies. The majority opinion says he had none and I conclude, from the wording of the Trust Agreement, that he had sufficent indicia. For example, the amendment of December 5, 1951, to the Trust Agreement stated in pertinent part:
“SECOND: * * * This insurance shall be the sole property of Stearns-Roger — assigned to the Colorado National Bank, as Trustee, and it shall be deposited with the Bank and held with the stock certificate in this Trust. Each stockholder shall have the right at any time and from time to time to designate and to change the ultimate beneficiaries and basis of benefit payments with respect to the insurance on his life” (Emphasis supplied.)
And, another Section provided in pertinent part that:
“FOURTH: Should any stockholder desire to dispose of all or any part of his stock in Stearns-Roger, or for any cause, including discharge, leave its employ, the op *580 tion of repurchase by the company contained in the Articles will apply. If * * *. In either event, the employee shall have the option to purchase for cash the insurance policies on his life at the cash surrender value
In my view Lacy’s right “to designate and to change the ultimate beneficiaries and basis of benefit payments,” as set forth supra, did create such an indicia of ownership in him in the insurance policies as to require the proceeds thereof to be accounted for in his estate as insurance proceeds under C.R.S. ’53, 138-4-9, which reads in pertinent part as follows:
ÍÍ * * *
“The excess over the sum of seventy-five thousand dollars, when paid immediately, or the excess over the sum of seventy-five thousand dollars of the commuted value and remainder thereof if paid in installments, of the net proceeds of all insurance policies and insurance contracts with insurance companies, payable either directly or through the medium of a trustee, to or for the use of named or described beneficiaries, taken out upon the life of the decedent and with respect to which the decedent at the time of his death possessed any of the incidents of ownership, shall be taxable. * * * ”
The trial court in the instant case relied upon Mitchell v. Commissioner, 37 B.T.A. 1 (1938) which, in turn, reaffirmed Dobrzensky v. Commissioner, 34 B.T.A. 305 (1936). Both of those cases were different on their facts primarily because indicia of ownership of the insurance policies were clearly present and to have held otherwise than the Board did would have resulted in dual taxation at the time they were decided. The principle involved in the above two federal cases, though, which principle by analogy can be applied here, is that by holding that the insurance was includable in the decedent’s gross estate the legal effect of the contracts involved was to reduce the value of the estate’s interest in the stock transferred by an amount equal to the insurance proceeds, and, only such reduced stock value was includable *581 in decedent’s estate as stock. Though our state inheritance tax is a tax on the transfer of property, and the federal estate tax is a tax on the value in an estate, such a distinction is unimportant in applying, as I would do, the Mitchell principle here.
The majority opinion discusses Hamilton v. People, ex rel., 113 Colo. 141, 154 P.2d 1008 (1945) and distinguishes it from the instant case, but in so doing it points up again that it does not believe that Lacy had any incidents of ownership in the policies in issue here, whereas I do. One of the indicia mentioned in Hamilton is the right “to change the beneficiary,” and I contend that Lacy had that right and that the Bank was not the true beneficiary. It was merely a trustee or nominee with no beneficial interest in the policies. The rule is that the holder of the naked legal title to property, who has no beneficial interest therein, is not the sole and unconditional owner thereof within the meaning of an insurance policy provision. 4 Appleman, INSURANCE LAW AND PRACTICE, § 2459. In any event, in Hamilton the court pointed out that it decided that case on a “contractual relationship under the attending circumstances,” and that is what I would do here.
The most difficult problem, as I see it here, is whether one can have indicia of ownership in an insurance policy solely by an extraneous contract where nothing appears in the policy which nominally is solely owned by another. Under the facts here I would say “yes.” This is so because the “sole property of Stearns-Roger” clause in the Trust Agreement, in my view, has to be read together with the other language in that Agreement. Other language shows that Stearns-Roger’s ownership of the insurance was in fact not 100% complete because of Lacy’s rights to designate and change beneficiaries and payments.
In conclusion, I believe that what happened in the instant case is that Lacy’s rights under the Trust Agreement gave him sufficient equitable indicia of ownership *582 in the policies under the attending circumstances and, regardless of the policy wording, to transmute by equitable conversion, the re-transferred stock into insurance proceeds. Cf. cases and comments cited in Vol. 2, Casey, “Tax Control ” published by Institute For Business Planning, §§ 3913.1 and 3913.2 concerning “Corporate-Owned Life Insurance”; and, Internal Revenue Cumulative Bulletin, Index Digest, 1957-60, page 1126. I would, therefore, affirm the judgment of the trial court.