PAUL LEGALLET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92520. Promulgated February 7, 1940.

*Lloyd Dinkelspiel, Esq.*, for the petitioner.
*Harry R. Horrow, Esq.*, for the respondent.

OPINION.

DISNEY: This proceeding involves income tax for the calendar year 1935 in the amount of $4,680.04. The question presented is as to the proper cost basis to petitioner of an interest in a partnership, purchased by him upon decease of his partner, pursuant to an agreement between the partners.

The greater portion of the facts was stipulated, including documents referred to and received in evidence pursuant to the stipulation. The facts so stipulated are found by us, and will be referred to only so far as necessary to consideration. They may be summarized as follows:

Petitioner, resident of San Francisco, California, filed his income tax return for the year 1935 with the collector for the first district of California, upon the basis of cash receipts and disbursements. He has since 1920 been in the business of leather tanning, and from 1923 had as a partner, without written agreement of partnership, one Neil O'Neill, who died September 15, 1935. From 1923, except for a short period in 1929–1930, the interests of the two partners were equal. After O'Neill's death petitioner acquired his interest in the partnership pursuant to an agreement hereinafter referred to, and in 1935 sold a portion of the assets so acquired, to wit, accounts receivable and merchandise, giving rise to the present question as to the proper base to be applied to the partnership interest so acquired.

The two partners had from time to time discussed and considered means by which in the event of the death of either the other should acquire the interest of the deceased, and deceased's wife should receive the value thereof, and to that end considered insurance. In 1923, when one Hermann was also a partner, O'Neill and Legallet each took out $2,000 life insurance, payable to Hermann and to the other partner, with right in the insured to change the beneficiaries. Later in 1923 Hermann was eliminated as beneficiary in each policy. In 1926 these policies expired, and in the same year O'Neill and Legallet each took out a $10,000 life insurance policy upon his life, with the other as beneficiary, O'Neill's policy being in the Missouri State Life Insurance Co. In 1929 O'Neill's wife was named beneficiary instead of Legallet in the Missouri State Life Insurance Co. policy and O'Neill's wife collected on the policy after his death. The policy taken out by Legallet with O'Neill as beneficiary continued until its expiration in 1930. On July 1, 1929, during a short period when one Metten was a third member of the firm, Legallet and O'Neill agreed in writing that the life insurance should remain as before, "Namely, that on the death of either party the other is to get the entire sum of the policy, to be used in purchasing the deceased's share of the business." In March 1932 Legallet and O'Neill each took out $20,000 life insurance on his life with the

other partner as beneficiary, with right to change beneficiary reserved. In May 1932 the beneficiaries on O'Neill's policy were changed to his wife or daughter, and on Legallet's policy the beneficiary was changed to his wife or children, and both policies were divided into four policies of $5,000 each. These changes of beneficiaries were made after an insurance agent named Deutsch, in an effort to promote his business, had discussed with Legallet and O'Neill the purpose and method of payment of proceeds of the insurance to the beneficiaries. A few days later, on May 25, 1932, Legallet and O'Neill and their respective wives entered into an agreement practically identical with the final agreement of February 8, 1935, described below, except that in the latter there was included reference to an additional $5,000 insurance policy taken out by each partner in July 1933, with his wife as beneficiary.

The agreement under which petitioner acquired the interest of his deceased partner was as above stated executed on February 8, 1935. In effect it provided, so far as herein material, that in case of the death of either, the survivor should purchase the decedent's partnership interest, that to effect that end each has procured five policies of insurance of $5,000 each on his life; that the parties agree to pay all premiums promptly, and that the firm, Legallet & O'Neill, is authorized and directed to pay same and deduct the sums paid from amounts payable to the partners; that the proceeds of the policies shall be disposed of as follows: the wife of each partner agrees to accept $25,000 paid by the life insurance companies as first payment on the deceased partner's interest, the full purchase price, until December 31, 1935, to be one-half of $111,871.63, the agreed full value, until that date, of the partnership; that if the sum received by the wife of the deceased partner from insurance should exceed the value of the interest transferred, she should nevertheless retain the full amount as purchase price for the partnership interest, but if the sum received by her is not sufficient to purchase the interest, the surviving partner agrees to pay to the wife of the deceased the difference between amount received and the value of the partnership interest, giving fifty 6 percent nonnegotiable notes each of 2 percent of the amount due, payable every thirty days.

The life insurance premiums were paid by the partnership (except that as to the one policy in Missouri State Life Insurance Co. after change of beneficiary to O'Neill's wife), and were charged on the partnership books to an insurance expense account, which account also included other insurance such as fire insurance. The premiums were charged against profit and loss and, therefore, were divided equally between the partners, as had been the custom for many years. Premium notices were addressed by one insurance company to each insured "c/o Legallet & O'Neill, 1099 Quesada Street, San Francisco, California," while the other company sent notices addressed to each

insured at "1099 Quesada Avenue, San Francisco, Cal." The policies were kept at the partnership office until O'Neill's death.

After the death of O'Neill there was paid or credited to his wife, by the insurance companies, $25,113.59, and pursuant to the agreement she accepted $25,000 out of the insurance proceeds as the first payment on the partnership interest, and received from petitioner 50 promissory notes of $618.72 (2 percent of the amount due), totaling $30,936. All of the notes which have matured have been paid with interest. Petitioner did not include in his individual income tax return for 1935 the $25,000 received under the insurance policies, or any part thereof.

In addition to the stipulated facts above epitomized, we find from testimony adduced the following additional facts: When Deutsch, the life insurance agent, in May 1932 called on the firm of Legallet & O'Neill he did so in the course of soliciting business and had not been before acquainted with either partner. In conference the question arose as to how the insurance on the policies then held would be paid to the wife of O'Neill. O'Neill wanted her to be certain to have fixed installments during her entire life. As then written, the policies provided a lump sum payment to the surviving partner and the agent suggested that a change was necessary if O'Neill wanted the insurance payable covering her entire life. The policies were changed as suggested by the agent.

The amount of insurance was raised in July 1933 from $20,000 to $25,000, as to each partner, with no change of other terms. The agent drew the rough draft of the agreement entered into by the partners and their wives upon February 8, 1935.

The respondent determined, in arriving at the deficiency herein, that the $30,936 represented by the promissory notes given by petitioner was petitioner's cost basis for the partnership interest acquired by him; petitioner contends for a cost basis of $55,936 by adding the $25,000 proceeds of insurance. Is petitioner entitled to the addition thereof as a part of his cost basis? The $25,000 was not in fact received by him, but by O'Neill's wife, and was not in fact paid by petitioner to her. Is the effect, for the present purpose, as if he had so received and paid the $25,000 as purchase price of the partnership interest acquired? The question is not easy of solution. Counsel for both parties state that no adjudication is squarely in point, but cite cases which they offer as helpful analogy. In fact, to a large extent they both offer the same cases, drawing opposite conclusions therefrom. Petitioner, in effect, contends that looking through form to substance, the insurance proceeds should be considered as received by petitioner as provided by earlier agreements between the partners, though not by the last agreement, that they were constructively re-

298

ceived by him, and that the insurance proceeds when received by O'Neill's wife were impressed with a trust and subject to use as part payment of the purchase price of the partnership interest acquired by petitioner, in accord with the use in the contract of the expression "part payment." Respondent contends that the last contract as actually made controls, that it, as distinguished from earlier insurance and the contract of July 1, 1929, does not provide that petitioner was beneficiary of the life insurance proceeds, that he did not receive them, did not pay them to O'Neill's wife, and, therefore, can not use them as a part of cost basis.

Of the cases allegedly analogous pointed out by the parties, we think *Boston Safe Deposit & Trust Co. et al., Executors*, 30 B. T. A. 679; *M. W. Dobrzensky, Executor*, 34 B. T. A. 305; and *Estate of John T. H. Mitchell*, 37 B. T. A. 1, come nearest to being of assistance. In the *Boston Safe Deposit* case a partnership owned a life insurance policy of $100,000 on the life of each member, with an agreement in effect that in case of a partner's death the amount should be credited upon the value as purchase price of the deceased partner's interest. We held that $129,247.19, the full value of the partnership interest, was includable in decedent's gross estate, but that no insurance was so includable. From this, petitioner concludes in substance that for estate tax purposes O'Neill's estate would be required to include the full $55,936, the agreed value of the partnership interest, and that it follows that petitioner must be allowed the same amount as cost basis. But in the *Dobrzensky* case, *supra*, we held that the reasoning, though not the result, in the *Boston Safe Deposit* case was wrong, that the insurance proceeds should have been included in the estate, and the value of the partnership interest only above the amount of insurance proceeds; and we so held on the facts in the *Dobrzensky* case, wherein the insurance was applied for by and upon the life of the partner who later died. The premiums were paid by the partnership but upon the agreement that the insurance proceeds be accepted by his wife in lieu of certain interests of decedent in the firm, including the right to use his name. We took the view that though the premiums were paid by the firm, it was for a consideration including the right to use his name and his interest in the good will, and that, therefore, the decedent bought the policies and they should be regarded as "taken out by the decedent upon his own life" under the statute and so includable in his gross estate. *Estate of John T. H. Mitchell, supra*, involved a situation much like that herein. Though there was no partnership, two men were each holders of the same amount of stock in a corporation and made an agreement protecting the survivor in his right to purchase the shares of the deceased, entailing life insurance taken out by each on his own life, the proceeds of which in case

of death were to be applied upon the purchase price of the stock to be purchased by the survivor. Though originally each was to pay the premiums upon the life of the other and one (as herein) on account of difference in age, had a heavier premium to pay, this was modified by agreement that the expense should be borne equally, and both premiums were paid by the corporation and charged, in equal amounts, against the personal accounts of the stockholders and offset by avails for salaries and dividends due to each. The beneficiary in each case was the estate of the insured, the right to change beneficiary was reserved, and the policy on the life of each was delivered into the possession of the other. We held that the amount of insurance proceeds received by the estate of the decedent must be included in his gross estate under section 302 (g) of the Revenue Act of 1926, and that only the remainder of the purchase price need be included.

Petitioner contends that in the above cases there was no difference in the total result whether the full partnership interest and not the insurance, or the insurance and only the balance of the partnership interest, were to be included in gross estate; but this is not correct, for if the insurance had been found payable to the other party, to be classed as "receivable by all other beneficiaries as insurance under policies taken out by decedent upon his own life", under the latter part of section 302 (g), only the amount thereof above $40,000 would have been included in gross estate. Regardless of that, however, we think our conclusions in the above cases indicate the proper conclusion here. In those cases, particularly in the *Mitchell* case, the fact that the insurance proceeds were to be applied upon *purchase price* to the survivor did not prevent a conclusion that such proceeds were insurance. In the *Mitchell* case the policies were actually delivered to the other party. The premiums were paid almost exactly as herein, out of common funds, in that the corporation paid them, as did the partnership here, and charged them to the individual accounts, offsetting, as here, amounts owing to the individuals. In all three of the above cases, and in this, the purpose was to provide a part of the purchase price of the partnership interest. If the insurance proceeds were insurance, to be included in gross estate in the cited cases, they would be such to the estate of O'Neill, and only the balance of the purchase price would be included in gross estate as from Legallet on the contract. Therefore we think petitioner can take as cost base only the latter amount. The conclusion that such proceeds must be considered insurance receivable by the wife of O'Neill, and not by petitioner, is further justified by the fact that the small amount of $113.59 above the $25,000 was received by O'Neill's widow as insurance, and it is not argued otherwise. If that was insurance so received, we think the whole $25,113.59 is such. Moreover, if the insurance proceeds had exceeded the value of the

purchase price, the wife would nevertheless have retained same—likewise indicating that they were insurance. Petitioner's argument that we should look to substance through form and find that the parties intended that petitioner be the beneficiary, as in previous transactions, is nullified by the mere fact that the parties, for reasons duly considered, deserted the older form of agreement and method of insuring with the other as beneficiary and adopted a different one. They wished a change of substance as well as form, for they wished a certain kind of distribution, and in order to obtain it, found it necessary to deviate from the old payment in a lump sum to the survivor. We can not reasonably now say that the change was unintentional or ineffectual. Likewise the idea that the insurance proceeds was a trust fund for payment to the petitioner is, we think, not accurate. It was, as in the three cases above discussed, subject to a contract, but not by way of such trust as to dictate constructive receipt of the amount by petitioner. A mere contract entailing the elements here involved does not constitute constructive receipt.

Upon the authority of the *Dobrzensky* and *Mitchell* cases, *supra*, above discussed, we conclude and hold that petitioner's cost basis does not include the $25,000 insurance proceeds received by the wife of his deceased partner.

*Decision will be entered under Rule 50.*