*Decision will be entered under Rule 50.*

ORR MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50458. Filed April 30, 1958.

*Harry Silverson, Esq.*, and *Frederick Gelberg, Esq.*, for the petitioner.

*Theodore E. Davis, Esq.*, for the respondent.

The Commissioner determined a deficiency in income tax of $3,933.80 for the short taxable period December 2 to December 31, 1946. The sole question is whether, for purposes of depreciation, the basis of assets received by petitioner upon the liquidation of Orr Cotton Mills is the same as the transferor's basis under sections 112 (b) (6) and 113 (a) (15), 1939 Code.

### FINDINGS OF FACT.

Petitioner, a corporation, was organized under the laws of South Carolina on December 2, 1946. Its income tax return for the taxable period December 2 to December 31, 1946, was filed with the collector of internal revenue for the district of South Carolina.

Petitioner's outstanding stock, consisting of 4,000 shares of common stock, has at all times (except for 8 shares placed in the names of 8 directors for qualifying purposes) been owned by M. Lowenstein & Sons, Inc., hereinafter referred to as Lowenstein. Lowenstein was incorporated in 1918, succeeding a partnership of the same name formed in 1889, and is a publicly owned corporation whose stock is listed on the New York Stock Exchange.

In 1928, and prior to that time, Lowenstein's business was essentially that of a converter of textiles. A converter of textiles buys textiles in their raw state, i. e., grey goods, determines the style or pattern and finish to be applied to such goods, and contracts to have the goods finished. The finishing processes include bleaching, dyeing, and printing. It then has the finished goods shipped to its customers.

It was Lowenstein's practice to have its various operations performed by subsidiary companies. Lowenstein had a number of wholly owned subsidiaries which were converters of different types of fabrics. Among such subsidiaries were Eddington Fabrics Corporation, Pickwick Draperies, and Duratex Company.

Prior to World War II, Lowenstein did not own, either directly or through a subsidiary, any grey goods mills. During World War II, the demand for textile products increased greatly, producing a shortage of grey goods, and Lowenstein experienced great difficulty in obtaining these goods. Lowenstein, to alleviate this difficulty, acquired grey goods mills in 1944 and 1946 by forming two wholly owned subsidiaries, Saratoga Victory Mills, Inc., and Huntsville Manufacturing Company, to buy the respective mills with funds supplied by Lowenstein. The subsidiary companies then began the manufacture of grey goods exclusively for Lowenstein.

On August 29, 1945, Lowenstein, through its agent, A. M. Law & Company, wrote to the president of Orr Cotton Mills, offering to purchase the latter corporation's plant, equipment, village, real estate, trucks, inventories, supplies, and all other items of real and personal property, as follows:

On behalf of, and as Agents for, M. Lowenstein & Sons, Inc., of New York City, we are submitting to you their offer to buy certain assets of Orr Cotton Mills on the following basis:

1. For plant, equipment, village, real estate, trucks and all other items of real and personal property (exclusive of inventories) owned by Orr Cotton Mills and carried on the Mill's audit as "Real Estate, Plant and Equipment", they will pay One Million, Two Hundred and Twenty-five Thousand ($1,-225,000.) Dollars.

2. With respect to Inventories, except supplies, they will purchase same at cost or market, or book value, whichever is lower. With respect to Supplies, they will purchase same at Thirty Thousand ($30,000) Dollars less than lower of cost, market or book value.

3. Taxes, insurance, etc. are to be prorated as is customary in real estate transactions.

It is planned that a new corporation to be formed will purchase these assets. The new corporation will be known as "Orr Cotton Mills", or a name similar thereto, in order to assure continuity of name and organization. It is intended to continue the present management.

The offer will be subject to examination of title and verification of proper legal procedure and similar details, and, if approved by the Board of Directors of the Mill, a formal contract will immediately be drawn by the buyer and the seller, subject to the approval of the parties, including your stockholders.

There will need to be set a closing date for the taking of inventories and transfer of title, which should be as soon after Stockholders' Meeting as possible.

We ask that no publicity be given to the above offer.

This offer is subject to acceptance within thirty (30) days from date.

Our commission as broker in the transaction is to be paid by the buyer.

The board of directors of Orr Cotton Mills, upon consideration of Lowenstein's offer, recommended to its stockholders that Lowenstein's offer be rejected, because its acceptance would have adverse tax consequences. Since the members of the board of directors also controlled a majority of the voting stock, its recommendation was certain to be adopted. Lowenstein thereupon decided to secure the properties of Orr Cotton Mills by making an offer for its stock.

The outstanding stock of Orr Cotton Mills consisted of 8,000 shares of common stock of $100 par value, and 8,000 shares of 7 per cent cumulative preferred stock of $100 par value. Both classes of stock were widely held, but the Orr family of Anderson, South Carolina, controlled approximately 1,800 shares. The president of Orr Cotton Mills, Lawrence Hammett, was the brother of a member of the Orr family whose husband had for many years been the head of the company. Together the Orrs and the Hammetts owned more than 2,200 shares of the common stock. Hesslein & Company, Inc., selling agents for Orr Cotton Mills, held 1,766 shares. J. E. Sirrine, also a member of the board of directors, owned 355 shares. Neither Lowenstein, nor any officer of Lowenstein, owned any stock of Orr Cotton Mills.

On October 4, 1945, Lowenstein entered into an agreement with the South Carolina National Bank of Charleston, Greenville, S. C., whereby it deposited $1,600,000 with the bank to cover the purchase of the outstanding 8,000 shares of common stock of Orr Cotton Mills for $200 per share. The bank was to act as agent and depository for all stock submitted by stockholders under the terms of the offer. The agreement gave Lowenstein the right to decline to purchase any stock if less than 51 per cent of the stock was submitted for sale. Although less than 51 per cent of the stock was submitted, the option was not exercised. By the end of December 1945, Lowenstein had only acquired 3,058 shares, or approximately 38 per cent of the stock, for its initial offer of $200 per share.

Ultimately, Lowenstein was able to acquire the remaining 4,942 shares of Orr Cotton Mills common stock, owned by the majority stockholders, for $676.38 per share. Lowenstein, to cover its purchase of these remaining shares, deposited the sum of $3,342,669.96 with the South Carolina National Bank of Charleston, the institution which was to act as a depository. The majority stockholders, in the stock purchase agreement covering the sale of their common stock to Lowenstein, agreed that "no further commitments will be made in connection with the future sale of goods, and only such commitments for the purchase of cotton and supplies will be made as are in the ordinary course of business." The last share of common stock was secured by Lowenstein on November 30, 1946.

The total cost to Lowenstein of all of the outstanding common stock of Orr Cotton Mills, including commissions paid to A. M. Law & Company, was $3,969,269.96.

On August 15, 1946, the board of directors of Orr Cotton Mills made provision to redeem and retire all of the outstanding preferred stock; the stock was subsequently retired pursuant to such provision.

On December 2, 1946, Lowenstein organized the petitioner, Orr Mills, under the laws of the State of South Carolina, and transferred to it the total outstanding common stock of Orr Cotton Mills in exchange for all of petitioner's authorized common stock. On the same day, petitioner acquired all of Orr Cotton Mills' assets, subject to liabilities, and liquidated the latter corporation. The administrative and mill employees of Orr Cotton Mills were retained by petitioner.

Petitioner, in its 1946 income tax return, deducted $14,502.20 for depreciation for the short taxable period, December 2 to December 31, 1946. In his deficiency notice, respondent determined that petitioner's allowable depreciation for the same period was $7,058.68.

Respondent has stipulated that petitioner is entitled to a deduction, not taken in its return, in the amount of $168.09 for the payment of additional South Carolina income tax.

The facts which have been stipulated by the parties are found as stipulated. The stipulation is incorporated herein by this reference.

OPINION.

Harron, *Judge:* The issue before us arises out of a dispute about the amount which petitioner is entitled to deduct for depreciation of assets which formerly were owned by Orr Cotton Mills. Respondent has determined that petitioner's basis for the depreciable property which is involved is the same as the basis thereof in the hands of Orr Cotton Mills because of the provisions of sections 112(b)(6) and 113(a)

(15), 1939 Code.[1]   That is to say, he takes the position that petitioner acquired the assets of Orr Cotton Mills through the liquidation of its wholly owned subsidiary, and therefore, acquired those assets with the transferor's basis.

Petitioner contends that it has a new basis for the acquired assets measured by the cost of the stock of Orr Cotton Mills, i. e., $3,969,-269.96.   Petitioner, in support of its contention, relies on the rule first enunciated in *Commissioner* v. *Ashland Oil & R. Co.*, 99 F. 2d 588, certiorari denied 306 U. S. 661, which is that where a taxpayer, interested primarily in a corporation's assets, is compelled to first purchase stock and then liquidate the corporation in order to acquire the desired assets, the separate steps taken to accomplish the primary objective will be treated as a single transaction.   Thus, even though the objective was accomplished, in form, by a purchase of stock, the substance of the transaction is a purchase of property.   In this type of transaction, the basis of the acquired assets is the cost of the stock, *Koppers Coal Co.*, 6 T. C. 1209, and no taxable gain is realized upon the necessary liquidation of the acquired corporation, *H. B. Snively*, 19 T. C. 850.   This principle has since been applied in numerous cases involving corporate purchasers, e. g., *Kimbell-Diamond Milling Co.*,

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.
  (b) EXCHANGES SOLELY IN KIND.——
    *      *      *      *      *      *      *
    (6) PROPERTY RECEIVED BY CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.——No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if—
      (A) the corporation receiving such property was, on the date the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property ; and
      *      *      *      *      *      *      *
      (C) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year ; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock, shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution ; * * *
  SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.
    (a) BASIS (UNADJUSTED) OF PROPERTY.——The basis of property shall be the cost of such property ; except that—
      *      *      *      *      *      *      *
      (15) PROPERTY RECEIVED BY A CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.—— If the property was received by a corporation upon a distribution in complete liquidation of another corporation within the meaning of section 112 (b) (6), then the basis shall be the same as it would be in the hands of the transferor. The basis of property with respect to which election has been made in pursuance of the last sentence of section 113 (a) (15) of the Revenue Act of 1936, as amended, shall, in the hands of the corporation making such election, be the basis prescribed in the Revenue Act of 1934, as amended.

14 T. C. 74, affirmed per curiam 187 F. 2d 718, certiorari denied 342 U. S. 827; *Kanawha Gas & Utilities Co.*, 214 F. 2d 685; *Montana-Dakota Utilities Co.*, 25 T. C. 408.

The successive steps which petitioner argues were, in substance, a purchase of assets, were as follows: (1) Lowenstein, petitioner's parent corporation, made an offer to purchase the assets of Orr Cotton Mills, but the stockholders of that corporation were only willing to sell stock. As a result, Lowenstein purchased all of the outstanding common stock of Orr Cotton Mills. (2) Lowenstein organized petitioner, Orr Mills, and distributed the acquired assets to petitioner for all of petitioner's stock. (3) Petitioner acquired all of the assets of Orr Cotton Mills and liquidated that corporation.

Respondent argues that the various steps taken should not be treated as one integrated transaction relating to the acquisition of assets for two reasons: First, petitioner took over assets other than the physical properties allegedly desired by Lowenstein, and this conclusively demonstrates that the objective of Lowenstein was to acquire a going concern. Second, that the assets were acquired by petitioner, a separate and distinct corporate entity, so that even if Lowenstein did intend to acquire assets, that intention cannot be imputed to petitioner. The same contentions have been considered by us in *Estate of James F. Suter*, 29 T. C. 244. In the *Suter* case, individual petitioners first sought to purchase the assets of Rondout 1935, a corporation. The sole owner of the capital stock of Rondout 1935 would only sell his stock. Petitioners purchased the stock, dissolved Rondout 1935, distributed the defunct corporation's assets to themselves, created a new corporation, Rondout 1945, and distributed the assets to the new corporation in exchange for its assuming liability for the purchase price of the stock. We held that the series of steps constituted one transaction; i. e., the purchase of the assets of Rondout 1935, by Rondout 1945, and therefore, the basis of the acquired assets in the hands of the new corporation was the purchase price of the stock. We held, also, that the intent to purchase assets can be ascribed to a corporation which is subsequently formed to acquire the assets, and we concluded that respondent's contrary contention was "purely technical." See also *Georgia Properties Co.* v. *Henslee*, 138 F. Supp. 587. We also held that the failure to eliminate unwanted assets may be an important factor in ascertaining whether a stock purchase or asset purchase was intended, but that where other circumstances indicate that an asset purchase was intended, the failure to "strip down" does not control.

The record here shows that petitioner's parent, Lowenstein, both wanted and needed the Orr Cotton Mills' plant for the manufacture of grey goods, and that Lowenstein did at first offer to purchase assets. Furthermore, petitioner has utilized the acquired assets solely to fulfill the needs of Lowenstein. We are of the opinion that the above-

156

mentioned facts, and the record as a whole, establishes that Lowenstein's primary purpose in purchasing the stock of Orr Cotton Mills was to acquire the latter corporation's assets. Under the reasoning of the *Suter* case, *supra*, Lowenstein's intention to purchase assets may be imputed to petitioner. We therefore hold that the substance of the series of steps here taken constituted a purchase of assets by petitioner.

Respondent's reliance on *John Simmons Co.*, 25 T. C. 635, is misplaced because the facts in that case indicated a purpose to acquire stock in a going business and to continue that business, unchanged, under a new corporate form. The facts in this case are clearly distinguishable.

It is held that the basis of the assets acquired by petitioner from Orr Cotton Mills is equal to the cost of the latter corporation's stock.

It has been stipulated that petitioner is entitled to a deduction of $168.09, for payment of additional State income tax. A Rule 50 computation is therefore necessary.

*Decision will be entered under Rule 50.*