Victor G. Mushro and Luella Mushro, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Louis A. Mushro and Anita A. Mushro, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket Nos. 2101–66, 2102–66. Filed April 15, 1968.

*Robert W. Siegel* and *Marcus Plotkin*, for the petitioners.
*Robert T. Hollohan*, for the respondent.

Fay, *Judge:* Respondent determined deficiencies in the petitioners' income taxes as follows:

| Docket No. | Petitioner | Taxable year | Deficiency |
|---|---|---|---|
| 2101–66 | Victor G. and Luella Mushro | 1961 | $14,880.58 |
| 2102–66 | Louis A. Mushro and Anita A. Mushro | 1961 | 13,403.75 |

Certain issues raised in the pleadings were disposed of by concessions of the parties. The issues left for decision are (1) what are the tax bases of the interests which petitioners Victor G. Mushro and Louis A. Mushro held in the Algiers Motel partnership and (2) what

is the total tax basis of the assets which the Algiers Motel partnership sold during its final taxable year.

Some of the facts were stipulated. The stipulation of facts together with the exhibits attached thereto is incorporated herein by this reference.

Victor G. Mushro (hereinafter referred to as Victor) and Luella Mushro are husband and wife. They filed a Federal joint income tax return for the taxable year 1961 with the district director of internal revenue for the District of Michigan. They were legal residents of Grosse Pointe Park, Mich., when they filed the petition in this case.

Louis A. Mushro (hereinafter referred to as Louis) and Anita A. Mushro are husband and wife. They filed a Federal joint income tax return for the taxable year 1961 with the district director of internal revenue for the District of Michigan. They were legal residents of Grosse Pointe Farms, Mich., when they filed the petition in this case.

Because Luella Mushro and Anita Mushro are parties to these proceedings only by virtue of filing joint returns with their husbands, only the latter are hereinafter referred to as petitioners.

On September 1, 1953, Lawrence A. Mushro (hereinafter referred to as Lawrence), Victor, and Louis created a partnership called Algiers Motel (hereinafter referred to as the partnership). The partnership was in the business of owning and operating a motel in Detroit, Mich. Victor, Louis, and Lawrence were brothers.

During the summer of 1956, the three partners agreed to enter into a buy-sell contract to be effective if one of them should die. They agreed that the estate of a deceased partner was to receive cash instead of an interest in the partnership. The cash was to be obtained from the proceeds of an insurance policy which each partner was to take out on his own life.

On June 16, 1956, Lawrence applied to the Crown Life Insurance Co. (hereinafter referred to as insurance company) for a $125,000 10-year term insurance policy on his life. Soon thereafter, the insurance company issued a policy. The policy number was 725,008. The beneficiary was Lawrence's wife, Pauline Mushro (hereinafter referred to as Pauline).

Later in the summer of 1956, the three partners engaged a lawyer to draw up a formal partnership agreement and a buy-sell contract. When the lawyer completed the job, Lawrence refused to sign the documents. He objected to the buy-sell agreement because it provided that the partnership was to be the beneficiary of the insurance policies on the lives of the partners. Lawrence insisted that Pauline was to be

the beneficiary of the policy on his life. He was afraid that if the partnership was the beneficiary, and if he were the first to die, his brothers might make it difficult for his estate to get its money under the buy-sell contract. The fear arose because of animosity between his brothers and his wife.

Because of Lawrence's objection to the buy-sell contract, Victor and Louis agreed to have it rewritten. They also decided to wait until a later time to sign the partnership agreement.

Early in September 1956, the lawyer submitted a new buy-sell contract and resubmitted the formal partnership agreement to the three partners. On September 5, 1956, the partners executed both documents.

The formal partnership agreement provided, *inter alia*, that the three partners were to share gains, losses, and capital equally and that Victor was to be the managing partner. The agreement also contained the following:

The partners further agree that they shall purchase insurance contracts for the payment of the proceeds of the policy to the beneficiary or estate of a deceased partner and that each of the partners agree to execute a partnership agreement as to said business life insurance.

\* \* \* \* \* \* \*

Upon the death or withdrawal of any of the partners, the co-partnership shall cease as to him, but shall continue as to the survivors or continuing partners in accordance with the terms of this agreement.

The relevant portions of the buy-sell contract were as follows:

WHEREAS, the partners desire to arrange for the sale to the partnership of the interests of any deceased partner in the partnership, and

WHEREAS, the partners believe it to be for their best interests and for the best interest of the partnership that the interest of a deceased partner be acquired by the partnership, and

WHEREAS, the partnership has arranged to provide the funds needed to acquire the interests of a deceased partner through life insurance policies on the lives of the partners.

IT IS THEREFORE AGREED:

\* \* \* \* \* \* \*

2. The partnership shall be the owner of, and shall pay the premiums on all of the policies listed in Schedule "A". The partnership shall charge the account of each partner with a part of the premiums on all the policies proportionate to his interest in the partnership.

3. The policy or policies on the life of each partner shall be payable as a death claim to the beneficiary or beneficiaries designated in the policies by such partner. Each partner shall have the right to designate and to change the beneficiary of the policy or policies on his life, and to specify the method of paying the insurance to said beneficiary and the other partners agree to join in any request for that purpose.

Upon the death of a partner, the proceeds of the policy or policies, on his life shall, when approved for payment by the insurance company constitute payment in behalf of the surviving partners for so much of the partnership interest of the decedent as can be purchased with said insurance proceeds. \* \* \*

If the valuation of a decedent's interest in the partnership * * * is less than the amount of said insurance proceeds, the decedent's beneficiaries shall, nevertheless, retain the full amount of the insurance proceeds, and the excess shall be deemed as additional payment for the decedent's interest in the good will of the partnership.

4. At the death of the partner, the surviving partners

A. Shall be the sole owners of the partnership business and all the assets employed therein, both tangible and intangible, including the good will and the right to use the firm name;

B. Shall assume full liability for and save the estate of the decedent harmless against all partnership debts and obligations; and

C. Shall pay to the executor or administrators of the decedent the amount, if any, by which the value of the decedent's interest in the partnership * * * exceeds the amount of the proceeds of said policy or policies, if any, on decedent's life. * * *

Because the buy-sell contract as finally written provided that the partnership was to own insurance policies on the lives of the partners, it became necessary to replace policy No. 725,008 which Lawrence owned on his own life. On January 3, 1957, therefore, the partnership applied to insurance company for a $125,000 10-year term insurance policy on Lawrence's life. On January 18, 1957, insurance company canceled policy No. 725,008 as originally written and reissued it to the partnership. The reissued policy was the same as the original one, except that the partnership, rather than Lawrence, owned it.

On June 25, 1958, the partnership applied to insurance company to reduce the sum insured of policy No. 725,008 from $125,000 to $100,000. Insurance company complied with the request, thereby reducing the premium on the policy.

On November 5, 1960, Lawrence died as a result of injuries sustained in an automobile accident. On November 21, 1960, Pauline filed a claim with insurance company for the sum insured under policy No. 725,008.

Insurance company was reluctant to pay the sum insured to Pauline because it believed the partnership had a greater right to the money. It therefore requested Pauline and the partnership to agree with each other as to who should receive the money.

On December 15, 1960, the partnership dissolved. Victor, Louis, Pauline, and John B. Kiefer, coexecutor with Pauline of Lawrence's estate, signed a dissolution agreement. The agreement provided, *inter alia*, that the sum insured under policy No. 725,008 belonged to Pauline. It further provided that the sum insured exceeded the value of Lawrence's interest in the partnership at the date of his death and that Pauline was entitled to the excess as payment for goodwill. The agreement also contained the following:

WHEREAS on the [5]th day of November, 1960, the aforesaid LAWRENCE MUSHRO died and thereupon the proceeds of the Crown Life Assurance Company policy became due and payable to PAULINE M. MUSHRO and * * * the

proceeds thereof were to constitute payment on behalf of the surviving partners, parties of the first part, [in purchase] of the interest of LAWRENCE MUSHRO * * * in the partnership business owned by the first parties and said LAWRENCE MUSHRO, and

\*       \*       \*       \*       \*       \*       \*

WHEREAS * * * the proceeds of the insurance shall be applied in like manner as if said funds were paid by said first parties to [Pauline] in full payment of all right, title and interest of LAWRENCE MUSHRO (now deceased) in his share and interest in the partnership and the assets and good-will thereof * * *

\*       \*       \*       \*       \*       \*       \*

Now THEREFORE, * * *

\*       \*       \*       \*       \*       \*       \*

The first parties herein agree to assume all of the obligations, debts, and liabilities, of the partnership firm known as the Algiers Motel and further agrees [sic] to save harmless the [party] of the second part [Pauline] * * *

On December 23, 1960, the partnership formally assigned all its right, title, and interest in the proceeds of policy No. 725,008 to Pauline. Insurance company thereupon paid $99,613.81 to Pauline. On January 10, 1961, Pauline wrote insurance company claiming an additional $468 under the policy. On January 19, 1961, insurance company replied that it did not owe the claimed amount because it represented unpaid premiums for the policy year in which Lawrence died. Soon thereafter, the partnership paid the disputed amount to Pauline. Victor and Louis felt that the partnership should pay the final premium because it had paid all the others.

On January 27, 1961, Victor filed a "Certificate of Discontinuance of Co-Partnership" on behalf of the partnership with the Wayne County clerk in Detroit. On the same day, Victor and Louis filed a "Certificate of Co-Partnership" with the Wayne County clerk evidencing the creation of a new Algiers Motel partnership (hereinafter referred to as new partnership). The partners of new partnership were Victor and Louis.

On July 10, 1961, new partnership sold all its assets for $300,000. Part of the $300,000 was a land contract and chattel note in the face amount of $202,950. New partnership sold the land contract and note on August 24, 1961, for $174,559.45.

In September 1961, new partnership filed a final Federal income tax return. It covered the period beginning September 1, 1960, and ending August 24, 1961. The return reflected new partnership's sale of its assets. It also included new partnership's election under section 754 [1] to utilize the optional basis-adjustment provisions of subchapter K. Pursuant to the election, new partnership increased the total basis of its assets by $63,850.63. The return included the following explanation of the basis adjustment:

---

[1] All statutory references are to the Internal Revenue Code of 1954.

FINAL RETURN

ALGIERS MOTEL

Schedule of Computation of Adjustment to Basis of Partnership

Assets as of November 5, 1960,
Date of Death of Lawrence Mushro, Partner

| Assets: | Book value | Appraisal value |
|---|---|---|
| Fixed assets | $187, 006. 56 | $386, 500. 00 |
| Current assets | 2, 921. 18 | 2, 921. 18 |
| Goodwill | 10, 000. 00 | |
| Total assets | 199, 927. 74 | 389, 421. 18 |
| **Liabilities:** | | |
| Mortgage note on land and building | $92, 077. 48 | $92, 077. 48 |
| Mortgage note on swimming pool | 4, 828. 50 | 4, 828. 50 |
| Accounts payable | 4, 083. 71 | 4, 083. 71 |
| Accrued expenses | 5, 888. 52 | 5, 888. 52 |
| Total liabilities | 106, 878. 21 | 106, 878. 21 |
| **Investment:** | | |
| 33.9%—Victor Mushro | 31, 515. 84 | 95, 782. 07 |
| 32.4%—Louis Mushro | 30, 167. 34 | 91, 543. 92 |
| 33.7%—Lawrence Mushro (deceased) | 31, 366. 35 | 95, 216. 98 |
| Total investment (100.0%) | 93, 049. 53 | 282, 542. 97 |
| Total liabilities and investment | 199, 927. 74 | 389. 421. 18 |

*Per Code sec. 743, par. 3978, Regulations 1.743–1*

Lawrence Mushro's adjusted share of interest in partnership property:

Fair market value of Lawrence Mushro interest at date of death _____ $95, 216. 98

Add, share of liabilities (⅓ of $106,878.21) _____ 35, 626. 07

Total _____ 130, 843. 05

Widow's share of the adjusted basis of partnership property:

Book value of husband's investment at date of death _____ $31, 366. 35

Add: Share of liabilities (⅓ of $106,878.21) _____ 35, 626. 07

Total widow's share _____ 66, 992. 42

Balance, equals amount to be added to the basis of partnership property _____ 63, 850. 63

As used in the above table, "book value" means tax basis.

On October 24, 1961, new partnership dissolved. On the same day, it distributed all its assets to Victor and Louis.

On their Federal income tax returns for 1961, petitioners reported their proportionate shares of the gain which new partnership reported from the sale of its assets. Neither petitioner, however, reported income from the dissolution of new partnership. Part of the reason for this was that each petitioner increased the basis of his interest in new partnership by $47,608.49. The increase for each petitioner was equal to one-half the value of Lawrence's interest in the partnership on the date of his death, exclusive of partnership goodwill.

In his statutory notice of deficiency, respondent increased the amount of gain reportable by each petitioner as his share of new partnership's gain from the sale of its assets. The ground for the increase was that new partnership was not entitled to increase the basis of its assets. Furthermore, respondent included in the income of each petitioner a gain from the dissolution of new partnership. The ground for the inclusion was that neither partner was entitled to increase the basis of his interest in new partnership.

OPINION

There are two issues for decision. First, did new partnership properly increase the basis of its assets subsequent to Lawrence's death? Second, did petitioners properly increase the bases of their interests in new partnership subsequent to Lawrence's death?

To resolve these issues, we must first decide what happened to Lawrence's interest in the partnership when he died. Viewing the record as a whole, we think the realities of the situation are that either petitioners or new partnership received the proceeds of the insurance policy on Lawrence's life and then paid them to Pauline in exchange for Lawrence's interest in the partnership. It is true that Pauline was the named beneficiary of the life insurance policy. The policy was written this way, however, solely as a security device. Petitioners proved to our satisfaction that the three partners intended either the surviving partners or the partership to receive the insurance proceeds and pay them to the deceased partner's beneficiary in exchange for his interest. The original buy-sell agreement was written in terms of this intention. Petitioners further proved that Lawrence, after seeing the original agreement, insisted that its terms be changed to circumvent any reluctance in his brothers to pay the policy proceeds to his wife if he were the first to die. Thus, for security reasons only, the terms of the buy-sell agreement were changed and Pauline was named the beneficiary of the insurance policy on Lawrence's life. Under the circumstances here presented, we feel constrained to heed the realities of the situation as reflected by the proved intent of the

partners, not the labels which they were forced by the exigencies of life to apply to the realities of their transaction. Cf. *Orr Mills*, 30 T.C. 150 (1958), acq. 1958–2 C.B. 7.

In reaching this view of what happened to Lawrence's interest in the partnership when he died, we are not unmindful of the holding in *Paul Legallet*, 41 B.T.A. 294 (1940). Some of the facts in that case are similar to those in the case at bar. In *Legallet*, the Court found the realities of the situation to be that the beneficiary named in the insurance policy received the proceeds thereof when the partner-insured died. There is, however, a vital difference between *Legallet* and the case at bar. In *Legallet*, the reason the partners' wives were the beneficiaries of the insurance policies was to make it possible for the wife of the first partner to die to receive, in effect, an annuity for life. In the opinion in that case, we said:

In conference the question arose as to how the insurance on the policies then held would be paid to the wife of O'Neill. O'Neill wanted her to be certain to have fixed installments during her entire life. As then written the policies provided a lump sum payment to the surviving partner and the agent suggested that a change was necessary if O'Neill wanted the insurance payable covering her entire life. The policies were changed as suggested by the agent. [41 B.T.A. at 297]

When the partners in *Legallet* named their wives beneficiaries of the life insurance policies, they were carrying out their basic intent—to provide an annuity to the wife of the first partner to die. It follows that in *Legallet* the partners did not intend, in their buy-sell agreement, for anyone other than their wives to receive the proceeds of the insurance policies. In the case at bar, however, the partners' real intent was to have either the surviving partners or the partnership receive the insurance proceeds. When the partners named their wives beneficiaries of the policies, they were not carrying out their real intent; they were only creating a security device to satisfy Lawrence.

Having decided that Pauline did not in reality receive the proceeds of the insurance policy on Lawrence's life, it is now necessary to decide who—as between petitioners and new partnership—did receive them. Viewing the record as a whole, we find the realities of the situation to be that petitioners received the insurance proceeds. Although the record contains evidence going both ways, the greater weight of the evidence supports this view. While many paragraphs of the buy-sell contract are worded in terms of the partnership buying the deceased partner's share, paragraph 4C is as follows:

4. At the death of the partner, the surviving partners

\* \* \* \* \* \* \*

C. Shall pay to the executor or administrators of the decedent the amount, if any, by which the value of the decedent's interest in the partnership * * *

exceeds the amount of the proceeds of said policy or policies, if any, on decedent's life. * * *

This provision is strong evidence that the three partners actually intended the surviving partners to buy the deceased partner's interest. It also suggests that the references elsewhere in the contract to the partnership as the buyer are merely shorthand for saying that the surviving partners are the buyers. Furthermore, the language of the dissolution agreement consistently portrays the surviving partners, not the partnership, as the buyers. All in all, we think the partners intended to create a buy-sell agreement between themselves, not between the partnership and each of them.

It is now possible to decide whether the basis adjustments in issue were proper. We look first at the adjustment which each petitioner made to the basis of his interest in new partnership. Petitioners argue that these adjustments are supportable under section 705(a)(1)(B).[2] We do not agree with this theory. Under our interpretation of the facts, new partnership did not, in reality, receive the insurance proceeds. It follows that section 705(a)(1)(B) is inapplicable to the facts of this case.

While we do not agree with petitioners' theory in regard to their basis adjustments, we think the adjustments themselves are supportable. We hold above that in reality petitioners bought Lawrence's interest in the partnership with the insurance proceeds. It follows that each petitioner had a cost basis pursuant to section 1012[3] for half of Lawrence's interest. See sec. 742 and Income Tax Regs., sec. 1.742-1. Because the interest which each petitioner acquired by purchase merged with his prior interest, each was entitled to increase the basis of his whole interest by the cost of the newly acquired addition. Thus, we conclude that each petitioner is entitled, under section 1012, to increase the basis of his interest in new partnership by at least $47,608.49.

Looking at new partnership's basis adjustment, we hold that it too is supportable. New partnership made its adjustment pursuant to

---

[2] SEC. 705. DETERMINATION OF BASIS OF PARTNER'S INTEREST.

(a) GENERAL RULE.—The adjusted basis of a partner's interest in a partnership shall, except as provided in subsection (b), be the basis of such interest determined under section 722 (relating to contributions to a partnership) or section 742 (relating to transfers of partnership interests)—

(1) increased by the sum of his distributive share for the taxable year and prior taxable years of—

* * * * * * *

(B) income of the partnership exempt from tax under this title. * * *

[3] SEC. 1012. BASIS OF PROPERTY—COST.

The basis of property shall be the cost of such property * * *

section 743(b)(1).[4] Section 743(b)(1) provides for, *inter alia*, an adjustment to the basis of partnership assets with respect to persons who purchase an interest in a partnership. Because we hold that in reality petitioners purchased Lawrence's interest in the partnership, an adjustment under section 743(b)(1) is necessary and proper. We therefore hold that new partnership is entitled to increase the total basis of its assets by at least $63,850.63.

In summary, we hold that new partnership's basis adjustment was proper and that petitioners' basis adjustments were proper.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

SIMPSON, *J.*, concurring: I agree with the ultimate conclusions of the Court in this case, but I am not convinced by the attempt to distinguish *Legallet*. Of course, the evidence in the two cases is different, but in my view, the inferences to be drawn from the evidence are not significantly different. However, since the Court today does draw different inferences, its decision does in effect overrule *Legallet*, and I would say so.

---

[4] SEC. 743. OPTIONAL ADJUSTMENT TO BASIS OF PARTNERSHIP PROPERTY.

(b) ADJUSTMENT TO BASIS OF PARTNERSHIP PROPERTY.—In the case of a transfer of an interest in a partnership by sale or exchange * * * a partnership with respect to which the election provided in section 754 is in effect shall—

(1) increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the partnership over his proportionate share of the adjusted basis of the partnership property, * * *

\* \* \* \* \* \* \*

Under regulations prescribed by the Secretary or his delegate, such increase * * * shall constitute an adjustment to the basis of partnership property with respect to the transferee partner only. A partner's proportionate share of the adjusted basis of partnership property shall be determined in accordance with his interest in partnership capital * * *